Filed 3/29/19

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION TWO


| | |
|---|---|
| Estate of LIESELOTTE A. HERZOG, Deceased. | |
| KEMP & ASSOCIATES, | E068698 |
| Petitioner and Appellant, | (Super.Ct.No. PROPS1400020) |
| v. | OPINION |
| WINNFRED HERZOG, | |
| Objector and Respondent. | |


APPEAL from the Superior Court of San Bernardino County.  Stanford E. Reichert, Judge.  Affirmed.

Seiler Epstein Ziegler & Applegate and Douglas A. Applegate for Petitioner and Appellant.

Diana J. Carloni for Objector and Respondent.

Lieselotte Herzog (the Decedent) died intestate on October 17, 2013.  In April 2014, the probate court issued letters of administration appointing Winnfred Herzog

1

(Nephew) as the administrator of the Decedent's estate. Kemp & Associates, Inc. (Kemp), a firm specializing in locating heirs, held a power of attorney for Maurene Schraff Nadj (Half Sister). In July 2016, Kemp petitioned the probate court for a determination that Half Sister was the Decedent's sole heir. (Prob. Code, § 11700.) The probate court denied Kemp's petition with prejudice due to Kemp presenting insufficient evidence.

Kemp raises four issues on appeal. First, Kemp asserts the probate court erred by bifurcating the issue of whether Half Sister is the Decedent's heir. Second, Kemp contends the probate court erred by concluding Kemp did not meet its burden of proof. Third, Kemp contends the probate court erred by ruling Kemp's evidence was inadmissible. Fourth, Kemp contends Nephew lacked standing to oppose Kemp's petition. We affirm the order.

## FACTUAL AND PROCEDURAL HISTORY

A.    FINAL ACCOUNTING

Nephew was the Decedent's late husband's nephew. In May 2016, Nephew filed an amended first and final accounting for settlement of the account and distribution of the Decedent's estate (Amended Accounting). In the Amended accounting, Nephew wrote, "Decedent is not survived by a spouse, never had children and is believed to be an only child. Her only heirs appear to be nieces and nephews by law, of her late husband."

Nephew calculated the balance of the estate, after payment of expenses and fees, as amounting to $205,219.89 in cash. Nephew identified the heirs as (1) Nephew, who

2

resided in New York; (2) Ruth Anni Sigel, who resided in Germany; (3) Gisele Gubele, who resided in Germany; and (4) Elise Owczarek, who resided in Germany. Nephew contended that each heir should receive 25 percent of the estate, which would amount to each heir receiving a payment of $51,304.97.

Nephew wrote, "[A]n heir finding service . . . has alleged a 'half-sister' of the decedent [exists], which if proven, would constitute an heir at law entitled to some or all of the estate. This individual has monitored the proceedings and requested and received special notice, including a copy of this petition. The estate has requested a birth certificate from the alleged heir, but none has been received to date. [¶] As such, [Nephew] currently requests distribution to the nieces and nephews of the decedent in equal shares . . . . [¶] . . . [¶] [Nephew] expects objections to the distribution proposed in herein [*sic*], and invites the alleged heir to dialogue immediately, such that at the time of the supplement, and prior to the date set, this issue might be addressed. [Nephew] has been authorized to offer the alleged and challenged heir at law a 20% interest in the estate, such that all five individuals would be receiving one-fifth equal share in the estate."

B.    PETITION

In July 2016, Kemp filed a petition requesting that Half Sister be found to be the sole heir of the Decedent's estate. Kemp asserted that because the Decedent's husband (Spouse) died in 1995, which was more than 15 years prior to the Decedent's death, Spouse's family had no claim to the Decedent's estate. Kemp argued that Half Sister was the Decedent's sole heir, in that the Decedent and Half Sister shared a father.

3

In support of Kemp's petition, it provided the declaration of Kemp's attorney, Laura Woodward. The declaration provided, in part, "The documents, including English translations, demonstrating [Half Sister's] entitlement to this Estate and attached hereto as Exhibit 1 were provided to [Nephew's attorney] on September 16, 2014."

Exhibit 1 to the declaration includes a "Translation of a German Document," translated from German to English by Hoerner Bank. The document reflects Franz Schraff (Father) married Wilhelmina Keβler in February 1928, and they divorced in June 1937. They shared one child, the Decedent, who was born in September 1928. The document further reflected that Father married Lina Beck in December 1944. A document handwritten in German follows the translated document. The handwritten document bears a stamp from the Creglingen City Archive, reflecting it is a "Family register held by [the] registry office."

Exhibit 1 includes a second "Translation of a German Document" (second translation), translated from German to English by Hoerner Bank. The second translation reflects Father married Lina Beck in 1944, and they had one child, Half Sister, in May 1950. The bottom of the second translation reads, "The certified copy reflects in the entries under Nos. 4, 5, 7, and 9 the status of December 31, 2008. This official certificate is not a vital statistics certificate as provided for the in the German Civil Status Act [PStG]. [¶] 97993 Creglingen, dated: January 24, 2014 [¶] Registrar's seal and signature by proxy [s] Naser." A document in German follows the second translation. There is a signature and a stamp on the German document.

4

There are more forms included in Exhibit 1, and each form bears three languages: German, French, and English. The first form appears to be a death certificate for the Decedent's mother. The second form appears to be the Decedent's marriage certificate.

Exhibit 2 also includes forms in three languages: (A) a birth certificate for Half Sister, signed by "Pisch," and bearing a stamp from Stadt Bad Mergentheim; and (B) a birth certificate for the Decedent, signed by "Beer," and bearing a stamp from Bad Friedrichshall.

On February 24, 2017, Woodward filed a verification for Kemp's July 2016 petition. Woodward wrote, "I have read the petition . . . , and know the contents thereof. The same is true of my own knowledge, except as to those matters which are therein alleged on information and belief, and as to those matters, I believe them to be true." Woodward explained that Kemp was not in San Bernardino County, which is why Woodward verified the petition.

C. NEPHEW'S TRIAL BRIEF

Nephew filed a trial brief. Nephew wrote, "[Half Sister] is a resident of Germany. Unverified and uncertified documents have been submitted suggesting that she is a one-half sister of the decedent. However the documents are not official records of the Republic of Germany and carry no consular authentication or certification nor official translation. The estate cannot recognize her documents absent compliance with the law." Nephew argued that Kemp had to comply with Evidence Code section 1400, concerning the authentication of written documents.

5

D. KEMP'S TRIAL BRIEF

Kemp also filed a trial brief. Kemp asserted, "Administrator [Nephew] is not impartial and may not, as Administrator, object to the Petition of [Kemp] to determine that [Half Sister] is Decedent's sole heir." Kemp asserted Nephew "violate[d] the requirement of impartiality . . . by filing objections [and] he also failed to obtain the mandatory court permission prior to filing his papers." Kemp also faulted Nephew for failing to provide evidence of the four heirs' status as the Decedent's heirs. Kemp argued that the four heirs are not the Decedent's heirs because they are related to Spouse, who predeceased the Decedent by more than 15 years. Further, Kemp argued, "The birth certificates of [Half Sister] and [the Decedent] are German documents which bear the appropriate German governmental seal. As such, the documents are self-authenticating."

E. HEARING

The probate court held a hearing in the case. At the beginning of the hearing, the court said, "Well, it looks to me like the first question the Court needs to resolve is having to do with, really, the submission of documents and whether the Court will accept them as authentic or not."

The probate court described Kemp's hearing exhibits: "Marked as Exhibit 1 is a document, single page, Bundesrepublik Deutschland. It's all in German. And at the very top right had corner it says, I believe, Formule . . . A. . . . [¶] Exhibit 2 is a three-page document Hoerner . . . Bank. Translation of a German Document. It says Family Book on it. [¶] Exhibit 3 is another document, single page, all in German. This also

6

has at the upper right hand corner Formule A. The difference between this one—the difference between Exhibit 1 and Exhibit 3 is that Exhibit 1 in the upper right it has the words Bad Mergentheim . . . . And on Exhibit 3 it says Bad Friedrichshall . . . . As I mentioned, it's all in German.

"And then Exhibit 4 is another document. This document is four pages. Hoerner Bank again. Implicated Translation of a German Document. Attached to it are some pages in German script. Some of which is printed and some of which is handwritten. And on the translation document it says—it's a chart. On the top of one side of the chart says Father of the Family, and on the other side of the chart it says Mother of the Family."

Kemp argued that Exhibit 1 is a birth certificate for Half Sister. Kemp contended, "The third page of the document has the official stamp on the back of that page." Kemp asserted that Exhibit 3 is a birth certificate for the Decedent, and Exhibit 4 is a translation of Exhibit 3. Kemp contended that Exhibit 3 "has the German seal on it on the back." The probate court responded, "It has a stamp." Kemp said, "And so the authenticating of that document under Evidence Code section 1452 is sealed, presumed to be genuine, and used to authorize and purports to be the seal of a nation recognized by the executive power of the United States. Which Germany certainly would be."

The following exchange occurred:

The Court: "[T]his is an attested copy?

"[Kemp's attorney]: Well, the attested copy I think is the stamp.

"The Court: I disagree with you. All I see is a government stamp.

7

"[Kemp's attorney]: Well, the government stamp I ask it be authenticated under [Evidence Code section] 1452 because it clearly has a government seal recognized by the United States as a birth certificate.

"The Court: Anybody can get a government stamp or seal. It can be a clerk in an office. In my view, you have a problem, counsel, because it's just a government stamp. It is no more meaningful to me that a conformed copy issued by a clerk. It is just a stamp, a rubber stamp.

"[Kemp's attorney]: But a certificate of birth, certificate issued in California or under certified copy is the same.

"The Court: That is apples and oranges. . . . That is completely different. Here we have German documents stamped by a German rubber stamper in Germany. As far as I can tell, all the rubber stamp on Exhibits 1 and 3 attest is that the document was signed on Exhibit 1, July the 10th, 2015, by someone named Pisch . . . . And on Exhibit 2, the document was stamped by someone named Beer, . . . on June 10, 2015.

"[Kemp's attorney]: The 1 and 3 are the certified stamps of—

"The Court: No. You have no evidence of that. What is your evidence of that, counsel?

"[Kemp's attorney]: The evidence is under the authentication is a stamped seal. It is an original seal.

"The Court: No, it's not. And it doesn't meet the other requirements required by the code."

As the dialogue continued, Kemp's attorney said, "There is no certification by the consul." The probate court replied, "Right. That is a huge problem for you. Because the rest of this is—first, I don't think the section that you cited, 1530, applies because it's not an attested copy. It is just a signature with a government stamp. And it isn't evidenced by an attested summary. And it's discretionary. [¶] So even if it qualified, I'm not inclined to include these documents, which simply are signed by some government person, I guess, who had access to a rubber stamp, and that it was signed on June 10, 2015, by someone named Beer in Bad Friedrichshall or stamped by someone named Pisch on July 10, 2015, in Bad Mergentheim. [¶] You've got a problem." The probate court concluded the exhibits "failed to comply with the evidence code . . . ."

The following exchange occurred:

"[Kemp's attorney]: Well, I think I'd like to proceed just on the petition itself.

"The Court: Why do you have standing?

"[Kemp's attorney]: We have standing, for one, your Honor, the petition has not been—the petition for entitlement or heirship has not been objected to.

"The Court: How do you have standing to do anything now? You are not an heir. If I made this ruling, you are not an heir."

Kemp argued that Half Sister is an heir because she is the "half sister of the decedent." The probate court replied, "You have to prove that. And you haven't given me any proof." Kemp said, "I've given a petition for entitlement." The probate court responded, I found there is no basis for the petition." Kemp replied, "The petition for

9

entitlement has not been contested." Kemp argued that no one filed a statement of interest after Kemp filed its petition, and that Nephew failed to obtain the court's permission before objecting to Kemp's petition and thus Nephew could not properly object. Kemp then argued that no one in the case had proved they are the Decedent's heir. The probate court said it was not ruling on the credibility of Nephew's claim that he was the Decedent's heir.

Nephew argued that he properly objected to Kemp's evidence because Kemp's evidence concerned the Amended Accounting filed by Nephew, in that Kemp was objecting to whom the estate would be distributed, and Nephew argued that Kemp failed to provide evidence that the estate would be improperly distributed. Kemp asserted that Nephew's explanation did not alter the fact that Nephew could not properly object to Kemp's petition for Half Sister to be declared the sole heir.

The probate court explained that a problem for Kemp was that only the personal representative of the estate or an alleged beneficiary of the estate could participate in the probate proceedings. The probate court said, "The Court has concluded that [Half Sister] is not a beneficiary. . . . I have ruled on the fact that that claim does not have merit. So in my view, there is no basis to proceed." The probate court concluded, "And, in my view, I'm sorry, [Kemp's attorney], you did not present a sufficient foundation under the evidence code for the presentation of your documents to substantiate and validate [Half Sister's] claim to be a beneficiary. Therefore, she has no standing."

The probate court issued a written order reading, "[T]he court Denies the Petition to Determine Heirship of [Half Sister], with Prejudice, citing insufficient Evidence presented by her counsel."

## DISCUSSION

### A.     BIFURCATION

Kemp asserts the probate court erred by bifurcating the issue of whether Half Sister is the Decedent's heir. Kemp contends the probate court needed to determine the status of all the heirs in the same proceeding; the court cannot determine the status of different alleged heirs in separate proceedings.

We apply the de novo standard of review to this question of law. (*Conservatorship of John L.* (2010) 48 Cal.4th 131, 142.) Probate Code section 11700 provides, "At any time after letters are first issued to a general personal representative and before an order for final distribution is made, the personal representative, or any person claiming to be a beneficiary or otherwise entitled to distribution of a share of the estate, may file a petition for a court determination of the persons entitled to distribution of the decedent's estate."

Probate Code section 11705 provides: "(a) The court shall make an order that determines the persons entitled to distribution of the decedent's estate and specifies their shares. [¶] (b) When the court order becomes final it binds and is conclusive as to the rights of all interested persons." In other words, "A final order of distribution operates in rem to settle the testate and intestate rights to distribution of all those who either did

11

or could have participated as claimants." (*Estate of Kampen* (2011) 201 Cal.App.4th 971, 987.)

We will assume, for the sake of judicial efficiency, that Kemp is correct—that the status of all alleged heirs must be determined simultaneously at a single hearing, rather than at successive hearings because the proceeding is in rem. (See e.g, *In re Estate of Hoffman* (1968) 265 Cal.App.2d 135, 141 ["an interlocutory determination of the issues relating to heirship and rights of distribution is improper"]; see also *Bales v. Superior Court of Los Angeles County* (1942) 21 Cal.2d 17, 22-23 [probate erred by making a preliminary determination in an heirship proceeding]; see also *In re Wise's Estate* (1949) 34 Cal.2d 376, 384-386, ["the right of heirship and distribution . . . is binding on the whole world," and the Probate Code "was designed to obviate useless and unnecessary repetitive hearings"].)

We now examine whether Kemp was prejudiced by the assumed error. (See *F.P. v. Monier* (2017) 3 Cal.5th 1099, 1107-1109 [a judgment may not be reversed unless the error resulted in a miscarriage of justice].) "To establish prejudice, a party must show 'a reasonable probability that in the absence of the error, a result more favorable to [it] would have been reached.' " (*Diaz v. Carcamo* (2011) 51 Cal.4th 1148, 1161.)

Kemp failed to provide evidence reflecting that Half Sister is the Decedent's heir. If the probate court determined Kemp's evidence was insufficient at a single in rem hearing for all the alleged heirs, rather than at a bifurcated hearing focusing upon Kemp, the result would be the same—the probate court found Kemp's evidence was lacking and failed to establish Half Sister's status as the Decedent's heir. In other

12

words, if the probate court decided Nephew's status as an heir at the same proceeding, there is nothing indicating the probate court would have found Kemp presented sufficient evidence. In sum, assuming the probate court erred, Kemp has failed to show it was prejudiced by the error.

Kemp contends the bifurcation was prejudicial because it permitted Nephew "to game the system and secure an inheritance for himself and the other three claimed nieces of [the Decedent] without providing any proof himself and without enduring the rigors of an adversarial proceeding." At oral argument in this court, Kemp explained that if all the alleged heirs were required to provide evidence of heirship at a single hearing, then the probate court would have seen that Kemp's evidence was as good or better than the evidence of the other alleged heirs. Kemp forgets its burden of proof. The burden of proof requires that Kemp demonstrate, by clear and convincing evidence that Half Sister and Decedent share a parent. (*Estate of Carter* (2003) 111 Cal.App.4th 1139, 1142.) Kemp's burden is not merely to provide the same or better evidence than another alleged heir. Thus, Kemp's assertion that the probate court would have been able to see that Kemp's evidence was equal to or better than the evidence of the other alleged heirs does not explain why Kemp would have met its burden of proof if there had been a single hearing rather than a bifurcated hearing. Because Kemp fails to explain how the result may have changed for Kemp absent the error, we will not reverse the probate court's order.

B.     SUFFICIENCY OF THE EVIDENCE

Kemp contends the probate court erred by concluding Kemp did not meet its burden of proof.

We generally apply the substantial evidence standard when the sufficiency of the evidence is at issue on appeal.  However, where the party who had the burden of proof in the probate court contends the court erred in making findings against it, "the question for a reviewing court becomes whether the evidence compels a finding in favor of the appellant as a matter of law.  [Citations.]  Specifically, the question becomes whether the appellant's evidence was (1) 'uncontradicted and unimpeached' and (2) 'of such a character and weight as to leave no room for a judicial determination that it was insufficient to support a finding.' " (*In re I.W.* (2009) 180 Cal.App.4th 1517, 1527-1528.)

Probate Code section 11704, subdivision (a), provides, "The court shall consider as evidence in the proceeding any statement made in a petition filed under Section 11700."  Kemp's petition reflects, "[Half Sister] is the surviving half-sister of Decedent, as shown in the chart attached hereto as Exhibit B."  There is nothing on Exhibit B indicating who created the chart.  Woodward's declaration reads, "The family Chart attached to the [Kemp] Petition as Exhibit B is the true updated copy of the Chart I provided to [Nephew's] attorney for [Nephew], on September 16, 2014."

Kemp's evidence fails to reflect how Kemp has personal knowledge that Half Sister and Decedent share a parent.  An inference could be made that Kemp's knowledge is based upon the inadmissible birth certificates and translations.  Given the

14

lack of evidence concerning Kemp's personal knowledge and the possibility that Kemp relied upon problematic sources when reaching its conclusion, the probate court could reasonably conclude there was a lack of evidentiary value to Kemp's statement that Half Sister and Decedent share a parent. (See *City of Santa Cruz v. Municipal Court* (1989) 49 Cal.3d 74, 87 ["an affidavit is normally presumed to state matters personally known to the affiant and lacks evidentiary value, in a variety of civil contexts, when based on information and belief, or hearsay"].)

Kemp's petition also reflects, "[Kemp] has established that [Half Sister] is the half-sister of Decedent. Decedent had no surviving issue and no surviving parent and only one issue of a parent; [Half Sister], daughter of Decedent's father." Kemp does not explain in this portion of the petition how it has personal knowledge that Half Sister and the Decedent share a parent. Due to the lack of information concerning Kemp's personal knowledge, the probate court could reasonably conclude that Kemp's statement lacked evidentiary value. (See *City of Santa Cruz v. Municipal Court*, *supra*, 49 Cal.3d at p. 87 ["an affidavit is normally presumed to state matters personally known to the affiant and lacks evidentiary value, in a variety of civil contexts, when based on information and belief, or hearsay"].)

Kemp provided the declaration of Woodward, its attorney. Woodward declared that, "The original, certified copies are in my possession," seemingly referring to the birth certificates. Woodward failed to set forth the facts demonstrating that the birth certificates were certified foreign copies, e.g., that they included an attestation (Evid. Code, § 1530, subd. (a)(3)). Due to the lack of factual information in Woodward's

15

declaration, and the declaration's focus on legal conclusions, the probate court could reasonably conclude the declaration lacked evidentiary value.

In sum, Kemp has not demonstrated that its evidence was of such character and weight as to leave no room for a judicial determination that it was insufficient. Accordingly, we conclude the probate court did not err.

Kemp contends the probate court erred because "[t]here was no opposition" and Kemp "offer[ed] some evidence." Kemp argues, "[A]ny evidence, however slight, prevails over no evidence." Contrary to Kemp's position, the burden of proof is not a contest as to who produces the most evidence. Rather, Kemp was required to meet a burden of proof as the petitioning party. (*In re Estate of Horman* (1968) 265 Cal.App.2d 796, 799 ["burden rested with the purported heirs to establish their relationship to the decedent"].) The fact that Kemp may have produced more evidence than Nephew did not require a finding that Kemp prevailed.

## C. ADMISSIBILITY OF THE FOREIGN DOCUMENTS

### 1. *CONTENTION*

Kemp contends the probate court erred by excluding the German birth certificates.

### 2. *STANDARD OF REVIEW*

We apply the abuse of discretion standard when reviewing a ruling excluding evidence. (*In re Marriage of Dupre* (2005) 127 Cal.App.4th 1517, 1525.) We apply the de novo standard when interpreting a statute. (*Ponce v. Wells Fargo Bank* (2018) 21 Cal.App.5th 253, 261.)

16

### 3. *EVIDENCE CODE SECTION 1452*

Kemp asserts a document bearing a seal is "self-authenticating," and therefore the birth certificates were admissible. Kemp cites Evidence Code section 1452, subdivision (c), as support for its theory that a seal causes a foreign document to be self-authenticating. Evidence Code section 1452, subdivision (c), provides, "A seal is presumed to be genuine and its use authorized if it purports to be the seal of: A nation recognized by the executive power of the United States or a department, agency, or officer of such nation."

"The Evidence Code does not define 'seal' but the Code of Civil Procedure does: 'A seal is a particular sign, made to attest, in the most formal manner, the execution of an instrument.' (Code Civ. Proc., § 1930.) In particular, '[a] public seal in this State is a stamp or impression made *by a public officer* with an instrument provided by law, to attest the execution of an official or public document, upon the paper, or upon any substance attached to the paper, which is capable of receiving a visible impression.' (*Id.*, § 1931.) The execution of an instrument is its subscription and delivery. (*Id.*, § 1933.)" (*Jacobson v. Gourley* (2000) 83 Cal.App.4th 1331, 1334-1335, fn. omitted, italics added.)

This court has held that a mark does not meet the definition of a seal unless it is also signed as part of its execution (Code Civ. Proc., §§ 1931, 1933). (*Jacobson v. Gourley*, *supra*, 83 Cal.App.4th at p. 1335.) The signature must be that of the public officer who executed the document. (Code Civ. Proc., § 1931 ["by a public officer"].)

17

Thus, in order for the mark on a document to be an official seal, it must include a signature by a public official.

The birth certificates provided by Kemp reflect one was signed by Pisch and the other was signed by Beer. Kemp does not direct this court to where, in the record, there is evidence that Pisch and Beer hold official governmental positions. Accordingly, because it has not been demonstrated that the birth certificates were signed by a public official, we are not persuaded by Kemp's reliance on Evidence Code section 1452.

4. *TREATY*

a. Contention

Kemp contends the authentication requirements of the Evidence Code have been superseded by the Hague Public Documents Convention.

b. Forfeiture

Nephew notes that the relevant articles of the Hague Public Documents Convention were not presented in the probate court, but Nephew does not specifically contend that Kemp has forfeited this argument. Our review of the record reflects that Kemp did not raise this legal theory in the probate court. In Kemp's trial brief, it argued its evidence should be admitted pursuant to Evidence Code sections 1452 and 1530. During the hearing, Kemp again asserted its evidence was admissible pursuant to Evidence Code sections 1452 and 1530. Because Kemp did not discuss the Hague Convention theory of admissibility in the probate court, we conclude the issue has been forfeited. (See *A.G. v. C.S.* (2016) 246 Cal.App.4th 1269, 1289 ["Mother, however, did not raise at trial the arguments against the court's evidentiary rulings that she raises

18

here. Because Mother did not raise those arguments at trial, she has forfeited the right to raise them on appeal"].)

Typically, an appellate court is barred from discussing an issue pertaining to the admissibility of evidence if the issue was not raised in the lower court. (*People v. Williams* (1998) 17 Cal.4th 148, 161, fn. 6.) However, because Nephew did not explicitly argue forfeiture in his respondent's brief, we will address the merits of the issue. (Gov. Code, § 68081 [court cannot decide an appeal on an unbriefed issue].)

c.    Self-Execution

"[O]ur federal Constitution provides that treaties made under the authority of the United States are part of the supreme law of the land and that the judges in every state are bound thereby. [Citation.] A treaty, however, does not automatically supersede local laws which are inconsistent with it unless the treaty provisions are self-executing." (*Sei Fujii v. State* (1952) 38 Cal.2d 718, 721.) Kemp fails to address the issue of whether the Hague Public Documents Convention is self-executing. For the sake of addressing Kemp's contention, we will assume the Hague Public Documents Convention is self-executing.

d.    The Hague Public Documents Convention

Article 2 of the Hague Public Documents Convention provides, "Each contracting State shall exempt from legalisation documents to which the present Convention applies and which have to be produced in its territory. For the purposes of the present Convention, legalisation means only the formality by which the diplomatic or consular agents of the country in which the document has to be produced certify the

19

authenticity of the signature, the capacity in which the person signing the document has acted and, where appropriate, the identity of the seal or stamp which it bears." Germany and the United States signed the Convention. (33 U.S.T. 883, T.I.A.S. No. 10072.)

Article 3 of the Hague Public Documents Convention provides, in relevant part, "The only formality that may be required in order to certify the authenticity of the signature, the capacity in which the person signing the document has acted and, where appropriate, the identity of the seal or stamp which it bears, is the addition of the certificate described in Article 4, issued by the competent authority of the State from which the document emanates." (33 U.S.T. 883, T.I.A.S. No. 10072.)

Article 4 of the Hague Public Documents Convention provides, "The certificate referred to in the first paragraph of Article 3 shall be placed on the document itself or on an 'allonge'; it shall be in the form of the model annexed to the present Convention." The annex includes a model certificate that reads:

"1. Country:

"This public document

"2. has been signed by

"3. acting in the capacity of

"4. bears the seal/stamp of

"Certified

"5. at

"6. the

"7. by

20

"8. Number

"9. Seal/Stamp:

"10. Signature:

"(Signature)"  (33 U.S.T. 883, T.I.A.S. No. 10072.)

e.  Evidence Code section 1530

Evidence Code section 1530, subdivision (a)(3), provides, in relevant part, "A purported copy of a writing in the custody of a public entity . . . is prima facie evidence of the existence and content of such writing . . . if:  [¶]  The office in which the writing is kept is not within the United States . . . and the copy is attested as a correct copy of the writing or entry by a person having authority to make attestation.  The attestation must be accompanied by a final statement certifying the genuineness of the signature *and the official position* of (i) the person who attested the copy as a correct copy or . . . ."  (Italics added.)

f.  Analysis

The Hague Public Documents Convention permits a contracting country to require a single certificate concerning the genuineness of the foreign document.  (33 U.S.T. 883, T.I.A.S. No. 10072.)  The certificate should include lines for "has been signed by" and "acting in the capacity of."  Evidence Code section 1530, subdivision (a)(3), requires "a final statement certifying the genuineness of the signature and the official position of (i) the person who attested the copy as a correct copy."  The requirements of the Hague Convention certificate appear to be consistent with the final statement requirements of Evidence Code section 1530, subdivision (a)(3)—an attached

21

certificate/statement identifying who signed and sealed/stamped the foreign document and that person's official position.

Kemp does not direct this court to the location, in the record, of the certificates/final statements for the two birth certificates, e.g., statements/certificates reflecting the capacities/official positions of Pisch and Beer. As a result, Kemp's reliance on the Hague Public Documents Contention is unpersuasive.[1]

5. *EVIDENCE CODE SECTION 1530*

Kemp contends the birth certificates were admissible pursuant to Evidence Code section 1530.

Evidence Code section 1530 provides for when "[a] purported copy of a writing in the custody of a public entity . . . is prima facie evidence of the existence and content of such writing . . . ." After setting forth various requirements, the statute provides, "If reasonable opportunity has been given to all parties to investigate the authenticity and accuracy of the documents, the court may, *for good cause shown*, (i) admit an attested copy without the final statement or (ii) permit the writing or entry in foreign custody to be evidenced by an attested summary with or without a final statement." (Evid. Code, § 1530, subd. (a)(3) [italics added].)

---

[1] Kemp requests this court take judicial notice of (1) the Hague Public Documents Convention, and (2) "Treaties in Force," a document that Kemp asserts reflects the United States' active treaties. We deny the request as to both documents because the Hague Public Documents Convention and list of signatories is published through common legal resources. (*Quelimane Co v. Stewart Title Guaranty Co.* (1998) 19 Cal.4th 26, 45, fn. 9 ["A request for judicial notice of published material is unnecessary. Citation to the material is sufficient"].)

Kemp asserts that it gave copies of the birth certificates to Nephew in 2014, which gave Nephew a reasonable opportunity to investigate the birth certificates, and, therefore, the documents were admissible under Evidence Code section 1530, subdivision (a)(3). Kemp's reliance on Evidence Code section 1530, subdivision (a)(3), is not persuasive because Kemp fails to address the issue of good cause.

### 6.    *CONCLUSION*

In sum, the probate court did not err by excluding the birth certificates.

### D.    NEPHEW'S STANDING

Kemp contends Nephew lacked standing to oppose Kemp's petition because Nephew did not petition the probate court to participate in the proceeding. For the sake of judicial efficiency, we will assume Kemp is correct. (See Probate Code, § 11704, (b)(1) ["[t]he personal representative may petition the court for authorization to participate . . . in the proceeding"].)

We examine whether Kemp was prejudiced by the error. (See *F.P. v. Monier*, *supra*, 3 Cal.5th at pp. 1107-1109 [a judgment may not be reversed unless the error resulted in a miscarriage of justice].) Kemp asserts that if Nephew had been excluded from the proceeding then no one would have objected to Kemp's evidence, and Kemp's evidence would have been admitted, even if the birth certificates "were insufficiently authenticated," because a court may only exclude evidence if a party raises an objection.

Contrary to Kemp's position, a court may find evidence to be inadmissible without an objection having been raised by a party. (*Gonzalez v. Santa Clara County Dept. of Social Services* (2017) 9 Cal.App.5th 162, 173; *O'Kelley-Eccles Co. v. State* (1958) 160 Cal.App.2d 60, 65.) In the instant case, the probate court repeatedly expressed its own concerns regarding Kemp's evidence. During the hearing, the probate court took a recess to retrieve a copy of the Evidence Code. The court then proceeded to question Kemp regarding the admissibility of Kemp's evidence. The court asked, "[T]his is an attested copy?" Kemp responded, "Well, the attested copy I think is the stamp." The court replied, "I disagree with you. All I see is a government stamp." The conversation continued with the probate court listening to Kemp's arguments and explaining why the arguments failed.

Because (1) a court may exclude inadmissible evidence on its own motion; (2) during the hearing, the probate court engaged in a detailed discussion concerning the admissibility of Kemp's evidence; and (3) the probate court repeatedly expressed doubts as to how Kemp's evidence could be admissible, we are not persuaded there is a reasonable probability that Kemp would have prevailed absent the assumed error. In other words, it appears that if Nephew had not objected, then the probate court would have excluded Kemp's documents on its own motion. (*Diaz v. Carcamo*, *supra*, 51 Cal.4th at p. 1161 ["To establish prejudice, a party must show 'a reasonable probability that in the absence of the error, a result more favorable to [it] would have been reached.' "].)

## DISPOSITION

The order is affirmed.  Respondent is awarded his costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(1).)

CERTIFIED FOR PUBLICATION.

MILLER
Acting P. J.

We concur:

SLOUGH
J.

RAPHAEL
J.