Filed 5/18/22  Estate of Herzog CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| Estate of LIESELOTTE HERZOG, Deceased. | |
| JASMIN KHEMERI et al., | E076028 |
| Contestants and Appellants, | (Super.Ct.No. PROPS1400020) |
| v. | OPINION |
| WINNFRED HERZOG, | |
| Objector and Respondent. | |

APPEAL from the Superior Court of San Bernardino County.  Stanford E. Reichert, Judge.  Affirmed.

Pacific Legal Group and Douglas A. Applegate for Contestants and Appellants.

Diana J. Carloni for Objector and Respondent.

This opinion constitutes this court's second time addressing this case.  Our prior opinion provides necessary background information:  "Lieselotte A. Herzog (the Decedent) died intestate on October 17, 2013.  In April 2014, the probate court issued

1

letters of administration appointing Winnfred Herzog (Nephew) as the administrator of the Decedent's estate. Kemp & Associates, Inc. (Kemp), a firm specializing in locating heirs, held a power of attorney for Maurene Schraff Nadj (Half Sister). In July 2016, Kemp petitioned the probate court for a determination that Half Sister was the Decedent's sole heir. (Prob. Code,[1] § 11700.) The probate court denied Kemp's petition with prejudice due to Kemp presenting insufficient evidence." (*Estate of Herzog* (2019) 33 Cal.App.5th 894, 896.) Kemp appealed, and this court affirmed the order on March 29, 2019. (*Id.* at p. 897.)

In May 2019, Jasmin Schäfbuch Khemiri and Lilian Anastecia Iwuoha (collectively, Grandnieces) filed a verified petition for determination of heirship and a statement of interest in the estate, in which they asserted they are the granddaughters of Half Sister, and thus the Grandnieces of the Decedent. Nephew moved for judgment on the pleadings. The probate court granted Nephew's motion, and entered a judgment against Grandnieces. Grandnieces assert the probate court erred by granting the motion. We affirm.[2]

---

[1] All further statutory references are to the Probate Code unless otherwise indicated.

[2] The register of actions in the appellants' appendix is incomplete. For instance, it is missing pages 2, 5, 7, 10, 12, 15, 18, 21, 23, 25, 28, and 30. (Cal. Rules of Court, rules 8.122(b)(1)(F) & 8.124(b)(1)(A) [appellant's appendix must contain the register of actions].) Failure to provide a complete record could result in dismissal of the appeal; however, we choose to not dismiss the appeal. (*Del Real v. City of Riverside* (2002) 95 Cal.App.4th 761, 768 ["A violation of the rules of court may result in the striking of the offending document, the waiver of the arguments made therein, the imposition of fines and/or the dismissal of the appeal"].)

**FACTUAL AND PROCEDURAL HISTORY**

A.  <u>AMENDED FIRST AND FINAL ACCOUNTING</u>

In May 2016, Nephew filed an amended first and final accounting. In that document, Nephew identified four heirs: (1) Nephew, (2) Ruth Anni Sigel, (3) Gisele Gubele, and (4) Elise Owczarek. Nephew contended that each heir should receive 25 percent of the estate. (*Herzog*, *supra*, 33 Cal.App.5th at p. 897.)

B.  <u>HALF SISTER'S PETITION</u>

In July 2016, Kemp, on behalf of Half Sister, filed a petition for determination of heirship asserting that Half Sister was the Decedent's sole heir. Half Sister allegedly had the same father as the Decedent. The father they allegedly shared was Franz Schraff (Father). Half Sister asserted that Nephew is related to the Decedent's husband, who predeceased the Decedent by more than 15 years. Due to more than 15 years elapsing, the Decedent's husband's relatives "have no claim in this Estate." As a result, Half Sister contended that she was the sole heir. Half Sister requested a trial "under Probate Code § 11700 . . . to determine [Half Sister's] entitlement to all distributions from this Estate."

On March 10, 2017, the probate court held a hearing on Half Sister's petition. Half Sister sought to prove her case with documents from Germany. Half Sister asserted the documents were birth certificates. One document indicated that the Decedent was born in September 1928 and that Father was her father. Another document indicated that Half Sister was born in May 1950 and that Father was her father. Nephew objected to the documents because they were not official records of the

3

Republic of Germany. Nephew asserted that Half Sister failed to comply with Evidence Code section 1400, concerning authenticating written documents.[3] The probate court found the documents lacked authentication and excluded them. After the documents were excluded, the probate court concluded Half Sister failed to prove she was the Decedent's heir.

The substance of the probate court's 2017 order reads as follows: "The trial in this matter came on for hearing on March 10, 2017, at 9:30 a.m., in Department S-35 of the above-entitled court, the honorable Stanford Reichert Presiding Judge, attorney Todd Robie appearing for [Half Sister] and attorney Diana Carloni appearing for [Nephew]. [¶] The court having read and considered the briefs and evidence of both parties, the court Denies the Petition to Determine Heirship of [Half Sister], with Prejudice, citing insufficient Evidence presented by her counsel. [¶] The court further continued the matter to April 18, 2017, at 8:30 a.m., for accounting review."

Half Sister appealed to this court. (*Herzog*, *supra*, 33 Cal.App.5th at p. 894.) In Half Sister's appellant's opening brief, she asserted that the probate court's order "does not purport to be a final judgment in the case. It is, indeed . . . merely an 'interlocutory decree [that] really adjudged nothing.' . . . A partial order on heirship 'does not bind [the trial judge] or any other judge . . . .' [Citation.] In any other context, this would likely render the order reviewable only by petition for issuance of a writ of mandate,

---

[3] An administrator may participate in heirship proceedings as "necessary to assist the court." (§ 11704, subd. (b)(2); see also *Estate of Kerkorian* (2018) 19 Cal.App.5th 709, 716.) "The court may direct the [administrator] to file papers as a party to the proceeding, or to take other specified action[s]." (§ 11704, subd. (b)(2).)

4

prohibition or other appropriate relief." **4** Nevertheless, Half Sister asserted the probate court's order was appealable as an order determining entitlement to the Decedent's estate (§ 1303, subd. (f))**5**, in that the probate court made a final determination that Half Sister was not entitled to a share of the estate. Nephew conceded that the order was appealable pursuant to section 1303, subdivision (f).

In our opinion in that case, we addressed several issues. First, Half Sister asserted the probate court had erred by excluding the alleged birth certificates; we concluded the probate court did not err. (*Herzog*, *supra*, 33 Cal.App.5th at pp. 905, 910.) Second, Half Sister asserted the probate court erred by finding that she failed to meet her burden of proof; we concluded the probate court did not err. (*Id.* at pp. 904-905.)

Third, Half Sister asserted the probate court erred by effectively bifurcating the issue of Half Sister's heirship from all the other potential heirs' claims of heirship. Half Sister was concerned that a bifurcation would effectively occur in that Nephew and the other alleged heirs might come to court at a later date claiming to be heirs, and would then prevail on proving their status as heirs without Half Sister being able to challenge them. Specifically, in her appellant's opening brief in the prior appeal, Half Sister asserted, "Since [Nephew] could not meet the same evidentiary standard that he insisted

---

**4** We take judicial notice of the appellate briefs filed in Court of Appeal case No. E068698, *In re Estate of Herzog*. (Evid. Code, § 452, subd. (d)(1).)

**5** Section 1303, subdivision (f), provides, "With respect to a decedent's estate, the grant or refusal to grant the following orders is appealable: [¶] . . . [¶] Determining heirship, succession, entitlement, or the persons to whom distribution should be made."

that [Half Sister] meet, his best goal was to get rid of [Half Sister] first and then return to court later on, with no opponent or competing claimant to make things as difficult for him as he made it for [Half Sister]."

In the prior appeal, Nephew responded by asserting that he raised the issue of heirship in May 2016, in the amended first and final accounting. Nephew contended that the accounting constituted a petition for heirship, and Half Sister's petition was effectively a statement of interest.

In the prior appeal, on the issue of whether the probate court effectively bifurcated Half Sister's claim of heirship from future claims of heirship, this court assumed, for the sake of judicial efficiency, that the probate court erred. (*Herzog*, *supra*, 33 Cal.App.5th at p. 903.) We then explained that the error was harmless because Half Sister failed to demonstrate that she could have met her evidentiary burden of proof if multiple heirs presented their claims at a single hearing. (*Id.* at pp. 903-904.)

Although Half Sister asserted that the probate court effectively bifurcated her heirship claim from future heirship claims, we must note that it does not appear the probate court bifurcated anything because, in 2017, there were not multiple issues to try. The probate court's ruling reflects Half Sister's petition was a petition—not a statement of interest—which means the probate court treated Half Sister's petition as the initial claim of heirship (§ 11700). There is no indication that any alleged heir filed a statement of interest in response to the petition (§ 11702), which means there were no competing claims by other alleged heirs that could have been bifurcated from Half Sister's claim.

6

This court affirmed the probate court's order. (*Herzog*, *supra*, 33 Cal.App.5th at p. 912.) Our opinion was filed on March 29, 2019, and the remittitur issued on June 3, 2019.

### C.    GRANDNIECES' PETITION

On May 31, 2019, Grandnieces filed a petition for determination of heirship "pursuant to the provisions of . . . section 11700, et seq." Grandnieces asserted they are the great-granddaughters of Father and the granddaughters of Half Sister. Grandnieces' Mother, i.e., Half Sister's daughter, died in 2013.[6] Grandnieces asserted that they "take in absolute priority over the heirs of [the Decedent's] pre-deceased husband."

In the petition, Grandnieces contended that, because the probate court determined Half Sister was not an heir, Grandnieces were not claiming heirship through Half Sister. "Rather, they submit[ted] their claim directly as the closest living heirs to the [D]ecedent, being direct issue of the [D]ecedent's father Franz Schraff." In other words, Grandnieces skipped over their grandmother—Half Sister—and emphasized their connection to the Decedent via an earlier generation, i.e., Grandnieces' great-grandfather, Father. Grandnieces asserted they could prove their relation to the Decedent via duly authenticated certified copies of birth certificates.

---

[6] Grandnieces alleged that their mother, Marianne Manuela Schafbuch Iwuoha, died in October 1997, but also alleged that she gave birth to Lilian Anastecia Iwuoha in November 1997. It appears from the exhibits attached to the petition that Grandnieces' mother died in 2013.

7

D.    NEPHEW'S MOTION FOR JUDGMENT ON THE PLEADINGS

Nephew asserted that the probate court had already determined Half Sister was not the Decedent's heir and that "is a determination in rem" that " 'is binding on the whole world.' "  Nephew asserted, "When [Half Sister] . . . filed her first claim of heirship, that action constituted notice to the entire world to appear before the court and assert any interest."  Nephew contended, "This petition is really a late filed statement of interest and pursuant to [section ]11702[ subdivision ](b)(3) [t]hey should have participated in the first proceeding."  Alternatively, Nephew contended Grandnieces' claim of heirship was barred by res judicata or collateral estoppel; however, Nephew offered little analysis on this point.

E.    OPPOSITION

Grandnieces opposed the motion for judgment on the pleadings.  First, they addressed collateral estoppel and res judicata.  They asserted (a) those doctrines "only apply to final judgments, and do not apply to earlier rulings in a case"; (b) a grandparent-grandchild relationship generally does not create privity; and (c) "[u]nder due process grounds, [Grandnieces] cannot be bound by [Half Sister's] failure to present adequate evidence of [Half Sister's] relationship to the [D]ecedent."  Second, Grandnieces asserted they "provided adequate proof" of their lineage.

F.    REPLY

In Nephew's reply to the opposition, he asserted the probate court had found that Half Sister was not the Decedent's heir, which means Grandnieces cannot be the Decedent's heirs.  Nephew asserted, "[A]ny attempt to establish lineage requires

8

[Grandnieces] to acknowledge that their lineage flows from and is derivative of [Half Sister]. The legal issue of [Half Sister's] lineage has been fully and finally determined in this case, and upheld on appeal. It does not exist."

G.    HEARING

On July 16, 2020, the probate court held a hearing on Nephew's motion for judgment on the pleadings. Grandnieces asserted that Nephew's motion was based upon collateral estoppel and res judicata, which did not apply because Grandnieces were not parties at the time of Half Sister's petition and were not in privity with Half Sister. In disputing Grandnieces' summary of his motion, Nephew explained that the primary argument in his motion was that Half Sister's petition involved a hearing on heirship, which is a proceeding in rem, which "is conclusive against all persons."

Grandnieces asserted that the hearing on Half Sister's petition had been limited to a determination of standing—it was not a determination of Half Sister's heirship. Nephew contended that Grandnieces were "not quite correct" about the issue decided on Half Sister's petition. Nephew asserted that the order on Half Sister's petition reflects that Half Sister is not an heir.

H.    RULING

On October 1, 2020, the probate court granted Nephew's motion for judgment on the pleadings. In the ruling, the court set forth the law, explaining that section 11700 proceedings are in rem and that a final order from such a hearing determining heirship and apportioning shares "is conclusive as to the rights of all interested persons when the order becomes final." (Boldface omitted.)

9

The probate court did not provide any analysis on that point following its explanation of that law. Instead, the probate court discussed collateral estoppel, and concluded that all the requirements for collateral estoppel were met. The court found "[t]he issue of heirship was decided in the prior [hearing];" "[t]he prior [hearing] resulted in a final judgment against [Half Sister]"; and Grandnieces were in privity with their grandmother, Half Sister, because Grandnieces "are in fact requesting the same determination" that Half Sister requested.

## DISCUSSION

### A. 2017 ORDER

#### 1. *PROCEDURE FOR DETERMINING HEIRSHIP*

"Section 11700 et seq., details the procedures by which interested persons and personal representatives may seek to establish who is entitled to a distribution from an estate." (*Estate of Bartsch* (2011) 193 Cal.App.4th 885, 891-892.) The process is initiated by a person petitioning the court for a "determination of the persons entitled to distribution of the decedent's estate." (§ 11700.) Notice of the hearing on the petition must be given to certain people, such as "[e]ach known heir whose interest in the estate would be affected by the petition." (§ 11701.) Prior to or during the hearing on the petition, "[a]ny interested person may appear and . . . file a written statement of the person's interest in the estate. . . . No other pleadings are necessary." (§ 11702, subd. (a).)

Thereafter, "[t]he court shall make an order that determines the persons entitled to distribution of the decedent's estate and specifies their shares." (§ 11705, subd. (a).) "When the court order becomes final it binds and is conclusive as to the rights of all interested persons." (§ 11705, subd. (b).) The order is "binding on the whole world" because it is proceeding in rem. (*In re Wise's Estate* (1949) 34 Cal.2d 376, 383-384.)

The purpose of this statutory scheme is to " 'provide the means by which, where there are hostile claimants to an estate, *all* the conflicting rights thereto may be summarily and finally determined in *one proceeding*. (*In re Burton*['*s Estate* (1892)] 93 Cal. 459, 461.)' (Italics by the court.) This is but another way of saying that an heirship proceeding, being in rem, concludes all claimants who do not appear as well as those who enter into a contest of the matter." (*Bodine v. Superior Court In and For Santa Barbara County* (1962) 209 Cal.App.2d 354, 360-361 (*Bodine*).)

Our Supreme Court has described the process as follows: " 'The jurisdiction of the probate court is a jurisdiction *in rem*, the *res* being the estate of the decedent which is to be administered and distributed with regard to the rights of creditors, devisees, legatees and all the world. [Citations.] By giving the notice prescribed by the statute, the entire world is called before the court, and the court acquires jurisdiction over all persons for the purpose of determining their rights to any portion of the estate, and every person who may assert any right or interest therein is required to present his claim to the court for its determination. Whether he appears and presents his claim, or fails to appear, the action of the court is equally conclusive upon him, " 'subject only to be[ing] reversed, set aside, or modified on appeal.' " The decree is as binding upon him if he

11

fails to appear and present his claim, as if his claim, after presentation, had been disallowed by the court.' " (*In re Radovich's Estate* (1957) 48 Cal.2d 116, 121.)

### 2. *ANALYSIS*

A critical aspect of this case is determining whether the 2017 order is a final order. In 2016, Kemp filed a petition on behalf of Half Sister. No one filed a statement of interest. In 2017, the probate court made a determination that Half Sister was not an heir. Given that there should be only one in rem proceeding to identify heirs, it would seem natural that the hearing on Half Sister's petition was the single in rem proceeding on heirship in this case. If that were true, then the 2017 order would be a final in rem order, which would mean Grandnieces' petition is untimely. (§§ 11700, 11705, subd. (b).)

However, at oral argument in this court, the parties agreed that the 2017 order is *not* the final order determining heirship. A final order "determines the persons entitled to distribution of the decedent's estate and specifies their shares." (§ 11705, subd. (a); see also Code Civ. Proc., § 1908, subd. (a)(1).) The probate court's 2017 order did not identify to whom the Decedent's estate would be distributed and did not apportion the estate. The 2017 order only concluded that Half Sister failed to prove she is an heir. The order did not, for instance, conclude that the entirety of the estate would escheat to the State due to no other potential heirs filing statements of interest. Thus, there is support for the position that the 2017 order is not the final order determining heirship because it is missing critical components of a final order (§ 11705, subd. (a)).

12

We face the following situation: There should be one proceeding to determine heirship and one order, but it appears there could be at least two proceedings and at least two orders in this case. Thus, we confront the question of what final effect, if any, to give the 2017 order when, technically, the 2017 order should not exist. The probate court and the parties have addressed that issue through the lens of issue preclusion. While a motion to set aside the 2017 order, filed years ago, might have been a procedurally cleaner approach, we will examine this issue through the doctrine of issue preclusion.

## B. ISSUE PRECLUSION

### 1. *LAW*

"The doctrine of collateral estoppel, or issue preclusion, is firmly embedded in both federal and California common law. It is grounded on the premise that 'once an issue has been resolved in a prior proceeding, there is no further fact-finding function to be performed.' [Citation.] 'Collateral estoppel . . . has the dual purpose of protecting litigants from the burden of relitigating an identical issue with the same party or his privy and of promoting judicial economy, by preventing needless litigation.' " (*Murray v. Alaska Airlines, Inc.* (2010) 50 Cal.4th 860, 864, fn. omitted.)

Issue preclusion applies " 'only if several threshold requirements are fulfilled. First, the issue sought to be precluded from relitigation must be identical to that decided in a former proceeding. Second, this issue must have been actually litigated in the former proceeding. Third, it must have been necessarily decided in the former proceeding. Fourth, the decision in the former proceeding must be final and on the

13

merits.  Finally, the party against whom preclusion is sought must be the same as, or in privity with, the party to the former proceeding.' " (*Hernandez v. City of Pomona* (2009) 46 Cal.4th 501, 511.)

### 2.  *IDENTICAL ISSUE*

"The 'identical issue' requirement addresses whether 'identical factual allegations' are at stake in the two proceedings, not whether the ultimate issues or dispositions are the same." (*Lucido v. Superior Court* (1990) 51 Cal.3d 335, 342.)

In Half Sister's petition for heirship, she asserted that she and the Decedent were both fathered by Father.  In Grandnieces' petition for heirship, they too alleged that Half Sister and the Decedent were both fathered by Father, and that Grandnieces are Half Sister's granddaughters.  Both petitions concern the factual allegation of whether the Decedent and Half Sister were fathered by Father.  Half Sister could only inherit if Father was her father and the Decedent's father.  Similarly, Grandnieces can only inherit if Father was the father of the Decedent and Half Sister.  Accordingly, the factual issues are identical.

### 3.  *ACTUALLY LITIGATED*

" ' "When an issue is properly raised, by the pleadings or otherwise, and is submitted for determination, and is determined, the issue is actually litigated." ' " (*Murphy v. Murphy* (2008) 164 Cal.App.4th 376, 400.)  In Half Sister's petition for heirship, she alleged that she and the Decedent were both fathered by Father.  The trial court held a trial on the matter.  The trial court's order reflects that the court "read and considered the briefs and evidence of both parties."  The court determined that Half

14

Sister failed to meet her burden of proving that she was related to the Decedent. Thus, the issue was actually litigated.

### 4. *NECESSARILY DECIDED*

"[T]he 'necessarily decided' prong means only that ' "the issue not have been 'entirely unnecessary' to the judgment in the initial proceeding." ' " (*Key v. Tyler* (2019) 34 Cal.App.5th 505, 534.) The primary issue in Half Sister's petition was whether she and the Decedent were both fathered by Father. Therefore, that issue was necessarily decided in the prior proceeding.

### 5. *FINAL AND ON THE MERITS*

" 'For purposes of collateral estoppel, a "final judgment" is defined as one that is "free from direct attack." Stated differently, "To be 'final' for purposes of collateral estoppel the decision need only be immune, as a practical matter, to reversal or amendment." (*People v. Santamaria* (1994) 8 Cal.4th 903, 942.) In the prior appeal, this court affirmed the probate court's finding that Half Sister is not the Decedent's heir. Because that finding was affirmed, it is not subject to reversal.

At oral argument in this court, Grandnieces asserted that if this court affirms the probate court in the instant appeal, then Grandnieces will move to set aside the 2017 order due to a lack of notice. "A direct attack is an attack on a judgment in the action in which it was rendered and the motion to vacate is one of the established methods of direct attack. [Citation.] However, a motion to vacate or set aside a judgment after the statutory time has elapsed for direct attack by a motion is a collateral attack." (*Estate of*

*Buckley* (1982) 132 Cal.App.3d 434, 446, fn. 2; see also *People v. Elinson* (1977) 70 Cal.App.3d Supp. 19, 23.)

Grandnieces asserted at oral argument that they would move to set aside the 2017 order due to a lack of notice, but they did not file such a motion before the judgment on appeal, and they have not demonstrated in this court that such a motion would be timely. Grandnieces may move in the trial court to set aside the 2017 order, but whether such a motion would be timely is outside the scope of this appeal. Thus, because it has not been demonstrated that such a motion could be made within the statutory time limits, Grandnieces have not demonstrated that the 2017 order is still open to direct attack. (*Estate of Buckley*, *supra*, 132 Cal.App.3d at p. 446, fn. 2 ["a motion to vacate or set aside a judgment after the statutory time has elapsed for direct attack by a motion is a collateral attack"].)

Grandnieces assert that collateral estoppel cannot apply because the 2017 order was made in the instant case. In other words, Grandnieces assert collateral estoppel can only apply in a successive lawsuit. Contrary to Grandnieces' position, when a case "may require several orders for its ultimate disposition," such as a dependency case or a divorce proceeding, those successive orders become subject to collateral estoppel once they are free from direct attack. (*Wodicka v. Wodicka* (1976) 17 Cal.3d 181, 188-189; see also *In re Matthew C.* (1993) 6 Cal.4th 386, 393, superseded by statute on another point, as stated in *People v. Mena* (2012) 54 Cal.4th 146, 156; *In re Marriage of Maxfield* (1983) 142 Cal.App.3d 755, 759.)

Grandnieces sought a successive order determining their heirship. Nephew alleged in his accounting that there were four potential heirs. Thus, it appears there is potential in this case for the probate court to make successive orders determining heirship. The 2017 order was reviewed on appeal and is now free from direct attack (we again note that the timeliness of a motion to set aside the 2017 order is beyond the scope of this appeal). Because it appears the 2017 order is free from direct attack, and it appears the 2017 order might be the first of at least two orders determining heirship, the 2017 order is sufficiently final for collateral estoppel purposes.[7]

We turn to whether the 2017 order was on the merits. A decision is "on the merits" when it determines " ' "the substance of the claim." ' " (*Castillo v. City of Los Angeles* (2001) 92 Cal.App.4th 477, 483.) In the 2017 order, the probate court denied Half Sister's petition for heirship, "with Prejudice, citing insufficient Evidence presented by her counsel." Thus, the probate court found that Half Sister failed to

---

[7] When issue preclusion is applied to an order filed in the same case in which issue preclusion is being argued, then the term "direct estoppel," rather than "collateral estoppel" is sometimes used. (*Border Business Park, Inc. v. City of San Diego* (2006) 142 Cal.App.4th 1538, 1563; *Sabek, Inc. v. Engelhard Corp.* (1998) 65 Cal.App.4th 992, 997; *U.S. v. Balin* (1992 7th Cir.) 977 F.2d 270, 276.) "Direct estoppel prevents a party from relitigating a fact which was already determined against it in 'a decision that finally disposes of a part of a claim on the merits but does not preclude all further action on the remainder of the claim; issues common to both parts of the claim are precluded, even though new issues remain to be decided.' [Citation.] Consider, as an example, a civil case for legal and equitable relief, where the claim for damages is tried to a jury, and the claim for equitable relief, to a judge. Any facts necessarily and finally decided by the jury are binding on the judge." (*Balin*, at p. 276.)

We use the term "collateral estoppel," rather than "direct estoppel," when discussing the issues in this case because (1) the parties use the term collateral estoppel, and (2) Half Sister, not Grandnieces, litigated the issue in 2017.

provide sufficient evidence to prove that she and the Decedent were both fathered by Father. That order determined the substance of Half Sister's claim, which means it was on the merits.

Further, in the prior appeal, Half Sister asserted "the probate court erred by concluding [Half Sister] did not meet [her] burden of proof." (*Estate of Herzog*, *supra*, 33 Cal.App.5th at p. 904.) We concluded Half Sister did not demonstrate that her "evidence was of such character and weight as to leave no room for a judicial determination that it was insufficient," and, thus, the probate court did not err. (*Id.* at p. 905.) In other words, we reviewed the substance of the probate court's decision and affirmed it. Thus, the appellate decision was also on the merits.

### 6. *PRIVITY*

"The concept of 'privity' is highly dependent upon the facts and circumstances in each case, but generally 'involves a person so identified in interest with another that [s]he represents the same legal right.' [Citation.] Moreover, the 'circumstances must have been such that the party to be estopped should reasonably have expected to be bound by the prior adjudication.' " (*Conservatorship of Buchenau* (2011) 196 Cal.App.4th 1031, 1041.) "A privy is one who, after rendition of the judgment, has acquired an interest in the subject matter affected by the judgment through or under one of the parties, as by inheritance, succession, or purchase." (*Bernhard v. Bank of America Nat. Trust & Savings Assn.* (1942) 19 Cal.2d 807, 811.)

18

In Half Sister's 2016 petition for determination of heirship, she alleged that she was the Decedent's "sole heir." In Grandnieces' 2019 petition for determination of heirship, they asserted that Half Sister died. Grandnieces alleged their mother, i.e., Half Sister's daughter, died. Grandnieces contended that they "are the surviving issue of the [D]ecedent's father Franz Schraff."

Grandnieces have effectively alleged that, due to the death of Half Sister, they are now entitled to the Decedent's estate. In other words, Half Sister represented Father's descendants while she was alive, and now Grandnieces have inherited the role of representing Father's descendants due to Half Sister's death. Half Sister and Grandnieces sought to enforce the same legal right—the right of Father's alleged descendants to inherit the Decedent's estate. Grandnieces should have reasonably expected that if Half Sister could not inherit from the Decedent, then they too could not inherit because they are in the same familial line as Half Sister. Because Half Sister and Grandnieces sought to enforce the same legal right for the same familial line, they are in privity.

7. *CONCLUSION*

In sum, issue preclusion applies. The probate court did not err by granting judgment on the pleadings.

## DISPOSITION

The order granting judgment on the pleadings is affirmed.  Respondent, Winnfred Herzog, is awarded his costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(1).)

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

MILLER

Acting P. J.

We concur:

SLOUGH

J.

RAPHAEL

J.

20