Filed 1/2/24

# CERTIFIED FOR PUBLICATION

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| Estate of ROBERT ALLEN FLORES, Deceased. | B320383 |
| | (Los Angeles County Super. Ct. No. 18STPB08481) |
| BRENDA DEPEW, as Administrator, etc., | |
| Petitioner, | |
| v. | |
| DONALD CARMODY, | |
| Objector and Appellant; | |
| AMERICAN RESEARCH BUREAU, INC., | |
| Claimant and Respondent. | |

APPEAL from an order of the Superior Court of Los Angeles County, Ana Maria Luna, Judge. Affirmed.

Jeff Klink for Objector and Appellant.

Augustine and Seymour and Michael Augustine for Claimant and Respondent.

———————————————

When an heir-hunter firm informed appellant Donald Carmody he was the heir of a nephew he never knew existed, he thought it was a scam. He assigned any rights he might have in the nephew's estate to his brother, John Carmody, believing any such rights were worthless.[1] However, the estate had value. John filed a petition under Probate Code section 11700 for determination of entitlement to distribution of the nephew's estate.[2] He obtained a determination that he and Donald were the nephew's heirs, each entitled to a 50 percent share of the estate. John died before the request for a final distribution order was submitted to the court. When the administrator of the nephew's estate sought a final distribution order that would take into account Donald's assignment of his rights to John, Donald objected, claiming the prior order determining entitlement to distribution was final, binding, and prohibited the court from recognizing his prior assignment of his interest to John. The court rejected this claim.

We conclude the trial court properly gave effect to Donald's assignment of his interest in the estate to John. John's rights as an assignee were not raised or litigated in the section 11700 proceeding, which was limited to a determination of heirship. John did not forfeit or waive his rights as an assignee by failing to assert those rights in the section 11700 proceeding, or by

———————————————

[1]  For the sake of clarity, we refer to John and Donald Carmody by their first names only. No disrespect is intended.

[2]  All undesignated statutory references are to the Probate Code.

2

failing to file a statement of interest.  We therefore affirm the trial court judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

On September 2, 2012, Robert Allen Flores (Decedent) died intestate.  He was not survived by a spouse, registered domestic partner, children, parents, or siblings.

In September 2018, American Research Bureau, Inc. (ARB), an "heir-hunter" firm, contacted brothers John and Donald to inform them that they were Decedent's maternal uncles.  John and Donald were therefore Decedent's heirs, and ARB offered to work with them in seeking a portion of the estate.  ARB sent Donald a copy of a 1930 federal census record reflecting that John and Donald's father had a first wife prior to marrying their mother.  ARB informed Donald that his father's first wife was the Decedent's grandmother.  Donald was skeptical.  Neither John nor Donald ever knew that they had a half sister—Decedent's mother.  Donald told John he thought they were being " 'scammed.' "  In e-mail correspondence, ARB assured Donald that ARB was "not a scam," and added: "If you are still not interested in receiving your portion of the estate, we can work with you so that you can assign your share to your brother if you wish."

In October 2018, John told Donald that he planned to " 'put in' . . . for the estate of robert flores" because he "could use some pesos."  That month, John signed an agreement assigning to ARB one-fourth of any interest he might have in Decedent's estate.  In November 2018, ARB e-mailed Donald again to inform him that it was "moving forward in this matter on behalf of your brother John," and asked if Donald wanted to be included in the proceeding with ARB's assistance.  Donald reiterated that he

3

believed ARB might be "running a scam" and that "time will tell." However, he also had "no problem assigning [his] share of this 'estate' to [his] brother." ARB's attorney prepared an assignment and sent it to Donald. In December 2018, Donald signed an "Assignment of Interest in Estate" stating: "I, DONALD D. CARMODY, hereby grant, transfer and assign all of my right, title, and interest in the above referenced estate to John L. Carmody, and hereby authorize and direct the Administrator of said estate to give my share and make payment to John L. Carmody of any interest I may have in said estate."

***Petitions for probate of Decedent's estate***

Meanwhile, in September 2018, Patricia McCluskey filed a petition requesting that the probate court appoint her as administrator of Decedent's estate. McCluskey alleged she was Decedent's first cousin, once removed, and that she and four alleged second cousins were Decedent's heirs-at-law and therefore entitled to the estate. McCluskey did not identify John or Donald as potential heirs.

In January 2019, John filed objections to McCluskey's petition on the basis that he, as a maternal uncle, was more closely related to Decedent and was entitled to inherit Decedent's estate to the exclusion of McCluskey and the alleged second cousins listed in her petition. Around the same time, John filed a competing petition for letters of administration nominating Brenda Depew as the administrator of Decedent's estate. His petition identified Donald as Decedent's other living maternal uncle.

In February 2019, the court denied McCluskey's petition and granted John's petition. The court issued letters of

4

administration appointing Depew as the administrator of Decedent's estate.

In July 2019, John filed a "Petition to Determine Entitlement to Estate Distribution [Probate Code § 11700]." He listed himself and Donald as Decedent's sole heirs-at-law and asserted they were each entitled to half of the estate. The petition did not reference the assignment from Donald to John or the assignment from John to ARB. No other person filed a statement of interest asserting entitlement to distribution of Decedent's estate or objecting to John's petition. The court granted the petition and, in October 2019, entered an "Order Determining Entitlement to Estate Distribution." The order found that "[a]ll notices have been duly given as required by law," declared that John and Donald were the "heirs-at-law of the decedent," and found each was entitled to a 50 percent interest in the estate.

In January 2021, Depew filed a "First and Final Account and Report of Administrator; Petition for Statutory Commissions; for Statutory and Extraordinary Attorneys' Fees; and for Final Distribution." Depew proposed a distribution of the balance of the estate, after payment of all outstanding fees and claims, to John and Donald, "each as to a 50% interest."

### John's estate

John died in August 2020. In his will, he named his stepdaughters Kara Masteller and Dawn Bailey as beneficiaries of his estate, and Masteller as the executor.

In April 2021, Donald's attorney contacted Masteller and Bailey by letter, "for the purpose of facilitating distribution directly to Don of his 50% interest in the [Decedent's estate]." Counsel indicated Donald had advised him of "his agreement

5

with [John], . . . whereby John was to receive both John's and Don's interest in [Decedent's estate], and then pay over Don's interest when [Don] arrived back from Thailand and was thus in a better position to receive the funds and deposit those to his bank." The letter stated it appeared the administrator of Decedent's estate had not been informed of John's death, or that "John had undertaken to receive Don's interest as a voluntary trustee."

Donald's attorney proposed that Masteller, Bailey, and Donald sign and submit declarations pursuant to section 13107, seeking an order from the probate court that it "pay directly to each of [them] the share otherwise due John . . . . And Don will also receive his share directly, as requested in the Petition already filed . . . ." The letter advised that regardless of whether Masteller and Bailey accepted counsel's suggestion, "Don has directed me to ensure that *he* receives distribution of *his* share directly from [Decedent's estate]."

In May 2021, Masteller filed a notice of "Assignment of Interest in Estate." She attached copies of Donald's assignment of his interest in Decedent's estate to John and John's will. Soon after, the Superior Court for Yolo County issued letters testamentary appointing Masteller the executor of John's estate.

In May 2021, Depew filed a "Supplement to First and Final Account and Report of Administrator; Petition For Statutory Commissions; For Statutory and Extraordinary Attorneys' Fees; and For Final Distribution." The supplement indicated that subsequent to filing the initial "First and Final Account," Depew learned that Donald had assigned his interest in Decedent's estate to John; John had post-deceased Decedent; and John left his entire estate to Masteller and Bailey. Depew therefore

6

stated: "Since Donald D. Carmody has assigned his entire interest in the estate to his brother John L. Carmody, and since John L. Carmody left a Will leaving his entire estate to Kara Masteller and Dawn Bailey, Petitioner proposes that 100% of the estate residue should be distributed" to Masteller.[3]

### Donald's objections

Donald objected to Depew's supplemental filing. Donald primarily argued that the court's October 2019 order was conclusive as to the persons entitled to distribution of Decedent's estate, therefore he was entitled to half the estate. Donald further argued his assignment to John was a conveyance in trust, because John told Donald by phone in July 2020 that he never intended to keep all of the money, and John had reassured Donald that he would split the funds equally with Donald if they were all distributed to John. Finally, Donald contended John waived the assignment by not identifying it in his July 2019 section 11700 petition.[4]

In a reply to Donald's objection, Masteller argued Donald's assignment of his interest in the estate to John was valid and was not waived because it was not before the court in the prior proceeding. She further argued the October 2019 order was only conclusive and binding "as to any claims of other heirs," and did not prevent the court from subsequently determining that "the validly executed assignments . . . determine the final distribution

---

[3]     Depew later filed two additional supplements to account for escrow funds that had been restored to Decedent's estate, additional interest, and John's assignment to ARB.

[4]     Donald also asserted objections related to bond issues and monies previously withheld from Decedent's mother's estate. Those issues are not before us on appeal.

of each party's share" of the estate.  Masteller pointed out that Donald, through his attorney, had confirmed that the brothers arranged for John to receive both shares, and neither brother had rescinded the assignment.  Masteller further asserted that if there was evidence John made an oral promise to Donald, the appropriate forum for litigating that claim would be in proceedings related to John's estate.

ARB also filed a reply to Donald's objection, arguing that Donald "erroneously conflated the concept of a determination of heirship with the Assignment."  According to ARB, the October 2019 order "simply clarified" the heirs of Decedent's estate but had "absolutely no impact on the effect of the Assignment" to ARB.  ARB further asserted Donald's arguments that the assignment was a conveyance in trust, or that the assignment was waived, were inequitable and barred by the doctrine of laches.

The court scheduled an accounting hearing for February 2022.  It instructed the parties to submit a summary of filings they wished the court to consider.  In his summary, Donald framed the main issue as "[w]hether enforcement of the [December] 2018 Assignment by Donald Carmody is precluded by Probate Code § 11705, the statutory application of the doctrine of collateral estoppel that applies following a proceeding to determine entitlement to distribution under Probate Code § 11700?"  He also contended the court should consider several "sub-issues," such as whether John waived or rescinded the assignment, and whether the assignment was invalid because it was obtained by duress or lacked consideration.

***Trial court ruling***

In April 2022, the trial court overruled Donald's objections and approved Depew's supplemental first and final account. The court concluded the issues presented in the "heirship petition" were "to determine who the heirs of the estate were and their respective percentage of interests in the estate." The October 2019 order "decided which individuals were statutorily entitled to inherit from the decedent but did not decide the distribution of those interests . . . ." The court reasoned Donald could not invoke collateral estoppel because "the issues in the heirship petition and petition for distribution are not identical and the validity of the challenged assignment was not presented to the court for determination in the heirship petition." The court rejected Donald's waiver argument, noting John had not sought such relief in the prior petition and instead had only requested that the court "determine conclusively, against any claims by any other potential heirs, who was entitled to inherit the estate of a decedent who died without a will."

The court further indicated it gave "very little weight" to Donald's "one-sided recitation" of a phone call during which John allegedly rescinded Donald's assignment to him, and it found John had not waived or rescinded the assignment. Finally, the court determined Donald freely assigned his interest in the estate to John without duress. The assignment was enforceable despite the lack of consideration because Donald "believed nothing would come of ARB's efforts and . . . valued his own interest in the estate at zero."

The court accordingly ordered "[d]istribution of balance of estate assets to Kara Mastellar [*sic*], Executor of the Estate of

John L. Carmody, less ¼ assignment to American Research Bureau by John L. Carmody."

Donald timely appealed. ARB filed a responsive brief. Neither Depew nor Masteller has appeared on appeal.[5]

## DISCUSSION

Donald argues the trial court's October 2019 order was binding and conclusive as to the distribution of Decedent's estate, thus the trial court erred in subsequently issuing an order that gave effect to Donald's assignment of his share in the estate to John. Donald further contends the court erred in rejecting his arguments that John waived or rescinded the assignment. We find no error.

## I. The Trial Court's October 2019 Order Did Not Prevent the Court From Giving Effect to Donald's Assignment in the Final Distribution Order

Donald's arguments regarding the scope and conclusive effect of the October 2019 order raise questions of law we review de novo. (*Conservatorship of John L.* (2010) 48 Cal.4th 131, 142.)

---

[5] Although some of Donald's arguments on appeal appear to be directed to the trial court's order enforcing both assignments, Donald concedes that he is not prejudiced by any trial court error enforcing John's assignment to ARB. "As a general rule, where only one of several parties appeals from a judgment, the appeal includes only that portion of the judgment adverse to the appealing party's interest, and the judgment is considered final as to the nonappealing parties." (*Estate of McDill* (1975) 14 Cal.3d 831, 840.) Masteller has not appealed from the trial court order giving effect to John's assignment to ARB. We further note that no party challenged the assignment to ARB below. We therefore limit our review to only the portion of the trial court order giving effect to Donald's assignment to John.

10

## A.    Section 11700 et seq.

Under section 11700, "[a]t any time after letters are first issued to a general personal representative and before an order for final distribution is made, the personal representative, or any person claiming to be a beneficiary or otherwise entitled to distribution of a share of the estate, may file a petition for a court determination of the persons entitled to distribution of the decedent's estate."  This proceeding is permissive.  If no petition is filed under section 11700, the court may determine who is entitled to distribution in a final distribution order.  (*Estate of Simmons* (1966) 64 Cal.2d 217, 220.)  Notice of the proceeding must be given to each known heir and devisee whose interest would be affected by the petition, the Attorney General in some cases, the personal representative of the estate, and all persons who have requested special notice in the estate proceeding. (§§ 1220, 11701.)

Section 11702 allows "[a]ny interested person" to appear and to file a written statement of the person's interest in the estate in advance of the hearing.  (§ 11702, subd. (a).)  If an interested person fails to timely file a written statement, the case is still at issue and may proceed.  The interested person "may not participate further in the proceeding for determination of persons entitled to distribution, but the person's interest in the estate is not otherwise affected."  (§ 11702, subd. (b)(2).)  In addition, "[t]he person is bound by the decision in the proceeding." (§ 11702, subd. (b)(3).)

Section 11705, subdivisions (a) and (b) provide that the trial court "shall make an order that determines the persons entitled to distribution of the decedent's estate and specifies their

11

shares," and "[w]hen the court order becomes final it binds and is conclusive as to the rights of all interested persons."

**B. The October 2019 order did not determine John's rights as an assignee**

On appeal, Donald contends that John's section 11700 petition "to [d]etermine [e]ntitlement [t]o [e]state [d]istribution" was necessarily a request that the trial court conclusively adjudicate the rights of any and all persons "interested" in the distribution of Decedent's estate, including assignees, and the resulting order bound all such interested persons. He asserts that while the portion of John's section 11700 petition discussing entitlement to distribution was "narrowly directed to the claims of *heirship* under Section 6402," this was merely to satisfy pleading requirements and did not limit the "interests" to be conclusively determined in the proceeding. Donald urges that since John failed to file a statement of interest as an assignee prior to the court's resolution of the section 11700 petition, those assignee rights were lost, and the court had no jurisdiction to consider them later.

Our analysis of these arguments begins with the plain language of the statute. (*Estate of Bartsch* (2011) 193 Cal.App.4th 885, 892.) While section 11700 allows any person claiming to be a beneficiary or otherwise entitled to distribution of a share of a decedent's estate to file a petition, section 11702 concerns any other persons with an interest in the estate. As noted above, under section 11702, any interested person may appear in a section 11700 proceeding and file a statement of interest. An interested person who fails to file a statement of interest may not participate further in the proceeding, "*but the person's interest in the estate is not otherwise affected.*" (§ 11702,

12

subd. (b)(2), italics added.)  On its face, this language indicates that the failure to file a statement of interest does not amount to an automatic forfeiture of the interested person's rights.

As a result, the effect of the proceeding on a person's interest in the estate must depend on what is litigated and decided in the section 11700 proceeding.  In this case, the section 11700 proceeding determined only the identity of Decedent's heirs and their respective shares of the estate.  John's interest as an assignee was contingent on Donald first being determined to be an heir of Decedent.  Even as an assignee, John was bound by the determination that Donald was Decedent's heir and was entitled to a one-half share of the estate.  John could not have subsequently argued that Donald was entitled to a greater or lesser share, for example.  (*William Hill Co. v. Lawler* (1897) 116 Cal. 359, 362 [any person who claims under an heir or devisee "is bound by the decree as fully as would be the heir or devisee himself if he had not made the conveyance"].)  Yet to conclude, as Donald contends, that John's rights as an assignee to Donald's share of the estate were eviscerated because he failed to file a statement of interest, we would have to ignore the express language of section 11702, subdivision (b)(2).

Indeed, Donald ignores section 11702, subdivision (b)(2) altogether.  He makes no attempt to explain how his argument that John's failure to file a statement of interest waived his assignee interest for all time can be squared with section 11702, subdivision (b)(2)'s provision that, other than preventing an interested person from participating further in the proceedings, the failure to file a statement of interest does not otherwise affect that person's interest in the estate.

13

Donald's arguments are also inconsistent with caselaw which has long drawn a distinction between heirs, devisees, and legatees, who have a direct entitlement to a share of a decedent's estate, and persons whose only interest in the estate is derivative of the rights of an heir, devisee, or legatee.  In many early cases, such as *Chever v. Ching Hong Poy* (1889) 82 Cal. 68, 71 (*Chever*), California courts rejected the argument that a probate court distribution decree determined or eliminated the rights an assignee or grantee held pursuant to an heir's assignment or conveyance of the heir's interest in an estate.  Many of these courts reasoned that the probate court had no jurisdiction to consider the claims of assignees or grantees for direct distribution of estate property.  Thus, a distribution order could not be deemed to have determined an assignee's or grantee's rights under an assignment or other instrument.

In *Chever*, for example, the plaintiff executed a deed conveying his interest in real property in his father's estate to his mother.  The probate court issued a distribution decree distributing the property to the mother during her widowhood, and subsequently to the plaintiff and his four brothers.  (*Chever*, *supra*, 82 Cal. at p. 70.)  When the mother died, the plaintiff claimed in a later proceeding that the probate court's distribution decree "destroyed the effect" of the deed he had previously executed in favor of the mother, and conclusively established he was entitled to a share of the property.  (*Id*. at p. 71.)  The *Chever* court rejected this argument, affirming the trial court finding that title to the property vested in the plaintiff upon the father's death and passed by the previously executed deed to the mother.  (*Ibid*.)

14

The *Chever* court held the probate court's determination of legal heirs did not create any new title and had "nothing to do with contracts or conveyances which may have been made by heirs, devisees, or legatees of or about their shares of the estate, either among themselves or with others; such matters are not before the probate court, and over them it has no jurisdiction." (*Chever*, *supra*, 82 Cal. at p. 71; *Barnard v. Wilson* (1888) 74 Cal. 512, 517 [third party's claim to title to estate property through heir not barred for failure to assert claim before probate court; judgment in rem and final distribution decree did not settle third party's claim; probate court had no jurisdiction to determine dispute between heirs and third persons].) The distribution decree thus did not invalidate the previously executed deed.

In *In re Estate of Burton* (1892) 93 Cal. 459 (*Burton*), the court held that the enactment of former Code of Civil Procedure section 1664, a predecessor to section 11700, was an express authorization and requirement that the probate court determine the interest of persons with an indirect claim to ownership of the estate. (*Id.* at pp. 461, 464; Stats. 1885, ch. 160, § 1, p. 208.) In *Burton*, the petitioner seeking a determination of entitlement to distribution was not an heir or direct beneficiary of the estate. Instead, she was the executor of the estate of the heirs' grantee. (*Id.* at p. 460.) The *Burton* court rejected the heirs' argument that "one who has purchased the interest of an heir or devisee in the property of an estate . . . has no right [under former Code of Civil Procedure section 1664], to have the interest thus purchased ascertained, declared, or directly distributed to him" by the probate court. (*Id.* at pp. 460–461.)

The *Burton* court distinguished *Chever* as relating to a "*ordinary* decree of distribution," rather than an order

15

adjudicating a petition to determine entitlement to distribution. (*Burton*, *supra*, 93 Cal. at p. 461.) The court explained that "in the ordinary mode of distribution [as in *Chever*,] the grantee of the heir is not a party to the proceeding, and there is no issue as to his title presented for determination." (*Id*. at pp. 461–462.) In *Burton*, the executor of the grantee's estate was a party to the proceeding, as she had filed the petition to seek a determination of her entitlement to distribution of estate property.

However, *Burton* did not address the conclusive effect, if any, of a decree determining entitlement to distribution on persons whose indirect claims were not presented. In fact, the court explained the entitlement to distribution proceeding as one in which "*all persons who claim ownership* of or an interest in the property of an estate of a testator or an intestate, whether directly, as heirs and devisees, or indirectly, through the heirs or devisees, may have their respective rights and interests in and to such property conclusively ascertained, determined, and declared, *so far at least as the parties before the court are concerned*, before distribution is decreed, to the end that the final distribution of the property may be made directly to the persons respectively entitled thereto . . . . But the provisions of the section are carefully limited to the ascertainment and determination of rights and interests claimed in privity with the estates, and are not applicable to rights or titles claimed adversely to such estates."[6] (*Burton*, *supra*, 93 Cal. at p. 461, second italics added.)

---

[6]     A leading treatise explains the historical distinction between claims adverse to the estate and claims in privity with the estate in relation to section 850: "Historically, superior courts

16

The *Burton* court thus did not consider whether an order determining only the heirs' entitlement to distribution foreclosed the claims of persons with an indirect interest in estate property when those claims were not presented in the proceeding. In contrast, in several subsequent cases concerning final distribution orders, the California Supreme Court continued to hold that while the order is conclusive and binding on those with direct claims on the estate such as heirs, it does not invalidate an heir's contract or arrangement to assign or convey the heir's interest in the estate to another person.

For example, in *Parr v. Reyman* (1932) 215 Cal. 616 (*Parr*), after the death of his mother and pending the administration of her estate, the plaintiff conveyed all of his interest in the mother's estate to his brother. A decree of distribution accordingly ordered the plaintiff's interest in the estate to be

---

sitting in probate had no jurisdiction to try *title disputes*; probate jurisdiction could only be exercised over assets *unqualifiedly* belonging to decedent or their estate. In no event could a third party claimant be brought into the proceedings, because such a claimant lacked 'privity' with the estate. [¶] In time, exceptions arose, whereby one claiming to be 'in privity' with the estate (i.e., an heir, beneficiary or appointed representative claiming through the estate) could litigate their title claim in the probate proceeding. [Citations.] [¶] Recognizing that it is more expeditious to resolve the entire controversy in a single proceeding, the Legislature ultimately broadened these exceptions to the point that the historical limitations have disappeared. All title disputes and adverse claims—including those involving strangers to the estate—are now resolvable in the probate proceeding under Prob.C. § 850(a)(2) . . . ." (Ross & Cohen, Cal. Practice Guide: Probate (The Rutter Group 2023) ¶ 15:555.)

17

distributed to his brother. (*Id*. at p. 617.) After the brother died, the plaintiff asserted a creditor's claim against the brother's estate, asserting he and the brother had an oral agreement that the brother would only hold the property conveyed from the mother's estate until the plaintiff required it back. (*Id*. at p. 618.) The probate court rejected the plaintiff's argument, finding the terms and conditions of any agreements between the plaintiff and his brother " 'merged' " in the distribution decree of the mother's estate, and the decree was final and conclusive. (*Ibid*.)

Our high court disagreed. Relying on prior decisions such as *Chever* and *Martinovich v. Marsicano* (1902) 137 Cal. 354 (*Martinovich*), the court re-stated the principle that a decree of distribution " ' "is conclusive as to the rights of heirs, legatees, or devisees"; but it is conclusive against them *as* heirs, legatees, or devisees—only so far as they claim in such capacities. . . . An heir may contract about or convey the title which the law had cast upon him on the death of his ancestor; and the validity or force of such contract is not affected by the fact that a probate court afterwards, by its decree of distribution, declares his asserted heirship and title to be valid.' " (*Parr, supra*, 215 Cal. at pp. 619–620, citing *Chever, supra*, 82 Cal. at p. 71.)

With respect to heirs' assignments of their interest in estate property to third parties, prior to the enactment of section 11604 (former section 1020.1), many courts concluded the probate court had no jurisdiction to determine the validity of such agreements. (*In re Estate of Howe* (1911) 161 Cal. 152, 156 [concluding when "the fact of conveyance is in dispute or where its validity or effect is an issue upon the distribution, the determination of that question is not a matter within the probate jurisdiction of the court"]; see *Estate of Cazaurang* (1946) 75

18

Cal.App.2d 217, 222 [1939 amendments to the Probate Code expressly gave probate court jurisdiction to determine the validity of assignments].)  Yet, even after statutory amendments expressly provided probate courts with jurisdiction to address the validity of a beneficiary's assignment of his or her interest in an estate to a third party, courts continued to distinguish between those entitled to distribution based on a testamentary document or the laws of succession, and assignees or other third parties, when evaluating whether a distribution order is conclusive or forecloses additional litigation over distribution of estate property.[7]

Thus, in *Fount-Wip*, *Inc. v. Golstein* (1972) 29 Cal.App.3d 751 (*Fount-Wip*), the court considered the conclusive nature of a preliminary distribution order which ordered distribution of a

---

[7]    Donald additionally argues that since no statement of interest was filed in the 2019 proceeding, the trial court had no jurisdiction to consider the validity of the assignments under section 11604.  Section 11604 expressly permits the trial court to consider, on its own motion, or on the motion of any other interested person, distributions that are to be made to the transferee of a beneficiary or "[a]ny person other than a beneficiary under an agreement, request, or instructions of a beneficiary or the attorney in fact of a beneficiary."  (§ 11604, subd. (a)(2).)  We note that the statute includes no language to suggest that if a section 11700 proceeding is initiated, the trial court may only consider the validity of an assignment within that proceeding.  Donald cites no legal authority to support his argument, nor does he assert any other arguments related to the trial court's findings under section 11604.  To the extent that Donald contends the trial court erred under section 11604, he has forfeited the argument. (*Delta Stewardship Council Cases* (2020) 48 Cal.App.5th 1014, 1075.)

legatee's interest in the decedent's estate to the sheriff, subject to the levy of the plaintiff who was the legatee's judgment creditor. (*Id*. at p. 754.) The legatee's wife subsequently claimed a superior right to the interest, based on the legatee's assignment of his interest to her. (*Id*. at pp. 754–755.) The plaintiff asserted the trial court erred in recognizing the wife assignee's claim because the probate court's prior distribution order conclusively established the plaintiff's right to the property. (*Id*. at p. 755.)

The *Fount-Wip* court rejected this claim, explaining: "There is no question that an order of preliminary distribution is conclusive as to the rights of heirs, legatees and devisees claiming under the will. [Citations.] However, neither the judgment creditor nor the third party claimant were claiming ownership based upon testamentary rights. It has been held that an assignee can establish the right to title in property held by an heir, devisee or legatee in an independent proceeding; as to the assignee, the probate court order of preliminary distribution is not conclusive. [Citation.] The order of distribution in the [decedent's estate] conclusively determined that [the legatee] was entitled to a certain share of the [decedent's estate]. What it did not determine was the status of other persons claiming title." (*Fount-Wip*, *supra*, 29 Cal.App.3d at p. 755.)

The court further rejected the plaintiff's argument that the wife's claim "represented a collateral attack on the decree of distribution. . . . The argument rests upon plaintiff's erroneous misconception of the nature of the decree of distribution made by the probate court. It *conclusively* determined that [the legatee] was entitled to a certain share of the [decedent's] estate. . . . It did not determine whether the judgment creditor or the third party claimant was the owner of [the legatee's] share, but left the

20

parties to litigate their claims elsewhere." (*Fount-Wip*, *supra*, 29 Cal.App.3d at p. 757.)

The *Fount-Wip* court's reasoning applies equally here. Although the October 2019 order was not a preliminary distribution order, it was equally true that the decree of entitlement to distribution conclusively determined that John and Donald were entitled to equal shares of Decedent's estate. It did not determine whether John, as an assignee, was the owner of Donald's share.

## C. The in rem nature of a section 11700 proceeding

Donald relies on the principle that proceedings to determine entitlement to distribution of an estate are in rem. Yet, this fundamental concept does not support Donald's ultimate argument. An examination of the cases Donald cites to support his argument makes this plain. For example, Donald cites *Estate of Wise* (1949) 34 Cal.2d 376 (*Wise*), for the proposition that the court's order in a section 11700 proceeding is "a decree in rem," and is "res judicata as to the whole world." (*Id*. at p. 381.) Yet, the *Wise* court did not consider the claims of persons with only derivative or indirect rights to a share of the decedent's estate. In *Wise*, the probate court had resolved two heirship petitions, filed by two potential sets of heirs who each claimed to be entitled to distribution of the estate by the rules of intestacy. The court determined the rights of heirship, found only one set of relatives had a right of heirship, and issued a corresponding decree. Subsequently, the administrator of the estate of one of the persons already found to have no heirship rights in the decedent's estate (appellant) attempted to attack the prior heirship decree

21

on the ground that no one had represented her interest in the prior proceeding.  (*Id*. at pp. 379, 381.)

Our high court rejected the appellant's argument.  The court restated the principle that an "heirship 'decree [is] conclusive against all persons' as the 'basis for the decree of distribution which [is] to follow' [citation]; it settles 'the rights of all persons claiming as heirs of the decedent, whether or not they are named in the complaint or personally served with summons' [citation] . . . .  The decree is not one '*in personam* in favor of one of the parties against another.'  [Citation.]  Rather, as founded in a specialized proceeding in rem—'not against persons as such, but against or upon the thing or subject matter itself'—the decree, when rendered, 'is a solemn declaration of the status of the thing, and ipso facto renders it what the [decree] declares it to be.'  [Citation.]"  (*Wise, supra*, 34 Cal.2d at p. 385.)

The *Wise* court's analysis was specifically directed to the determination of heirs, persons with a direct right to a share of the estate.  As explained above, courts had long distinguished between heirs and others, such as assignees.  The *Wise* court's statement that an heirship decree settles the "rights of all persons claiming as heirs" therefore cannot be interpreted as necessarily applying to any person who might receive a distribution only through the enforcement of a contract with an heir.

Donald does not acknowledge the historical distinction courts have drawn between those with direct claims to an estate, such as heirs, and those with only indirect claims, such as the assignees of heirs.  Instead, he contends that because section 11700 concerns distribution, and allows for the participation of any interested person, the October 2019 order

22

must be understood as finally adjudicating—and in this case eliminating—the rights of all other interested persons. Yet, he fails to cite a single legal authority holding that where the claims of an heir's assignee are not raised in a petition to determine entitlement to distribution, the court's resulting order determining the identity or respective interests of the heirs moots, eliminates, or otherwise precludes those unadjudicated assignee claims.

The nature of the assignee claim John possessed in this case was a claim of one party against another, not a claim of a direct entitlement to distribution from the estate. In cases in which an heir conveyed his or her share in an estate before the decree of distribution, the California Supreme Court's reasoning was different than in *Wise*. As explained in *In re Estate of Loring* (1946) 29 Cal.2d 423 (*Loring*), in those cases, courts held that a decree of distribution adjudicating the rights of heirs, legatees, or devisees "is not conclusive as between such heir, devisee or legatee and his assignee and with respect to the rights arising under the assignment, even though the assignee is also an heir, devisee[,] or legatee of the decedent. It is settled, however, that the assignee is bound by the decree insofar as it determines the rights his assignor would have in the estate had no assignment been made." (*Id.* at pp. 429–430; cf. *Estate of Schmelz* (1968) 259 Cal.App.2d 440, 448 [probate court properly considered petition for homestead although not filed until after heirship petition had been adjudicated; "The heirship petition determination is 'binding on the whole world' once it becomes final [citation], but this does not circumscribe the probate court from imposing liens or other burdens on distributive property"].)

23

*Loring* described a final distribution order, and we acknowledge that *Burton* distinguished the entitlement to distribution proceeding in its analysis of the probate court's ability to consider grantee claims for distribution. However, both a section 11700 proceeding and a final distribution order are binding and conclusive on "all interested persons." (§§ 11605, 11705.) And the *Burton* court's analysis involved the claims of an interested person that were expressly presented to the court. Together, the cases described above explain that the probate court has jurisdiction to consider the claims of assignees in a proceeding to determine entitlement to distribution. If those claims are presented, the court's decree is binding and conclusive. But neither the caselaw nor the statute indicates that an assignee's failure to seek validation or enforcement of the heir's assignment in a section 11700 proceeding voids the assignee's unadjudicated rights under the assignment, or precludes the probate court from subsequently giving effect to the assignment in a final distribution order.

The underlying rights of the heir, devisee, or legatee to a share of the estate are conclusively determined in a section 11700 proceeding. But the rights of the assignee against the heir, devisee, or legatee arise by contract. (*Martinovich, supra*, 137 Cal. at p. 359 [expression in some cases that under notice for distribution the "whole world is brought before the court" and every person entitled to assert claim must present it or lose any rights must be construed in context; final distribution order was not determination of claims against the heir or devisee for their portion of the estate].) If not raised in the section 11700 proceeding, the assignee's rights against the heir, devisee, or legatee are not barred by the court's order determining the

24

persons entitled to a direct distribution of the estate.  This is the meaning of section 11702, subdivision (b)(2): an interested person's failure to file a timely statement of interest bars their participation in the proceeding but does not in itself affect their interest in the estate.

### D.	The authorities Donald relies upon do not support his arguments

Other authorities Donald relies upon are inapposite as they merely recite the general principle that an heirship decree is conclusive and binding, but do not concern the rights of an assignee of an heir, devisee, or legatee to have the assignment recognized in a subsequent proceeding.  (See, e.g., *Estate of Kampen* (2011) 201 Cal.App.4th 971 [final order for distribution conclusive as to rights of all interested persons, but court did not err in vacating void final order]; *Estate of Herzog* (2019) 33 Cal.App.5th 894 (*Herzog*) [court expressly assumed but did not decide whether probate court erred in failing to determine status of all *heirs* in a single in rem proceeding; any error was harmless]; *Bodine v. Superior Court* (1962) 209 Cal.App.2d 354 [addressing propriety of severing proceedings to determine multiple *heirs*]; *Estate of Radovich* (1957) 48 Cal.2d 116 [addressing whether probate court's decision that respondent could inherit from the decedent as an adopted son was a conclusive characterization for inheritance tax purposes].)

*Estate of Ward* (1954) 127 Cal.App.2d 207 (*Ward*), is also distinguishable.  In *Ward*, the sole heir to the Ward estate purported to assign his interest in the estate to two different parties.  One of the assignees (the appellant) filed a petition for determination of heirship.  The other assignee (the respondent) did not file a statement of interest but appeared at the hearing

25

and asked to be heard.  The court allowed the respondent to be heard over the petitioner's objection, and ultimately ordered the estate to be distributed to the respondent.  (*Id*. at pp. 208–209.) The appellate court concluded the trial court erred in considering the respondent's claim because he failed to file a written statement of interest.  (*Id*. at p. 209.)  The court reviewed authorities considering claims to heirship and held that "one seeking to establish claim to heirship" under former section 1080 must file a written statement of interest to have "standing" before the probate court to be heard.  (*Id*. at p. 211.)  The appellate court also rejected the argument that the proceeding was not actually to determine heirship, but was instead a request to recognize the validity of an assignment.  (*Id*. at pp. 211–212.) The court reasoned the analysis in *Burton* foreclosed the argument.

*Ward* was decided prior to the addition of section 11702 to the Probate Code.  At the time, former section 1080 provided for the filing of a statement of interest, but did not specify, as section 11702 now does, that the failure to file a statement of interest bars an interested person from participating further in the section 11700 proceeding but does not otherwise affect that person's interest.  (Stats. 1953, ch. 349, § 1, p. 1621.)  The *Ward* court's reasoning is of only limited applicability in light of this change in the statutory language.  To the extent the *Ward* court concluded an assignee's interest is automatically forfeited by the failure to file a statement of interest, we disagree that the same conclusion could be reached under the current version of the statute.  (Cf. *Estate of Torrance* (1957) 154 Cal.App.2d 350, 357 [following 1953 amendments to the statute no need to file statement of interest if administrator sets forth theory of manner

26

in which estate should be distributed and interests of heirs are represented in the petition].)

Moreover, *Ward* is distinguishable from this case on its facts. In *Ward*, an assignee filed the petition to determine "heirship," but the identity of the decedent's heirs was undisputed and not at issue. (*Ward*, *supra*, 127 Cal.App.2d at p. 212.) While the appellate court rejected the argument that the proceeding was one to establish the validity of an assignment rather than a proceeding to determine heirship, the facts before the trial court concerned only the derivative rights to distribution of the estate resulting from the heir's assignment of the same interest to two different parties. In this sense, *Ward* is consistent with *Burton* and other cases that concluded the probate court has jurisdiction to consider the rights of assignees as part of a binding and conclusive heirship determination proceeding. (See, e.g., *Estate of Baglione* (1966) 65 Cal.2d 192, 195–196 [probate court erred in refusing to determine heir's separate contractual interests in decedent's estate, however error harmless because court properly adjudicated the contract claim in a separate action].)

Here, however, John's section 11700 petition sought a determination of heirship, not his rights as an assignee. Indeed, John's rights as an assignee could not be perfected until the probate court first determined the identity of Decedent's heirs and their respective interests in the estate. Under sections 11702 and 11705, the October 2019 order prevented John from challenging Donald's entitlement to a portion of the estate as an heir, but it did not affect his contractual rights as Donald's assignee, which were only derivative of and contingent upon Donald's rights as an heir. For these reasons, we also reject

27

Donald's argument that John's act of filing a petition seeking an order that he and Donald were each entitled to a one-half share of the estate as heirs effectively waived his rights under Donald's assignment. The two issues were distinct and, under section 11702, John's failure to assert an assignee interest in the section 11700 proceeding did not waive those rights.[8] Donald presented no other evidence of waiver.

*Herzog*, *supra*, 33 Cal.App.5th 894, likewise fails to support Donald's arguments. Donald cites *Herzog* for the proposition that it is improper for the trial court to bifurcate a section 11700 proceeding. *Herzog* concerned a section 11700 proceeding to determine the identity of the decedent's heirs. The nephew of the decedent's husband filed an amended first and final accounting for settlement of the account and distribution of the estate which claimed the decedent's only heirs were her late husband's nieces and nephews. Prior to the issuance of a final distribution order, an heir-finding firm (Kemp), acting under a power of attorney, filed a section 11700 petition claiming the decedent had a half sister who was the decedent's sole heir. (*Id.* at pp. 897–898.) Rather than determining the status of all purported heirs in one

---

[8]     We similarly reject Donald's argument that the trial court lacked jurisdiction to enforce the assignment in the final distribution order because the October 2019 order deprived John, the executor of John's estate, and the administrator of Decedent's estate of standing to bring the assignment to the court's attention. To the extent *Ward* can be read as holding the failure to file a statement of interest deprives an assignee of standing to assert that interest in a subsequent proceeding, even when the issue of assignments is not raised or adjudicated in the section 11700 proceeding, we disagree.

proceeding, the probate court first considered, and rejected, the purported half sister's claim of heirship. (*Id*. at pp. 901–902.)

On appeal, Kemp argued the probate court erred by failing to determine the status of all the heirs in the same proceeding. (*Herzog*, *supra*, 33 Cal.App.5th at p. 902.) The reviewing court did not decide whether bifurcating the proceeding was error. Instead, the court *assumed*, "for the sake of judicial efficiency," that the status of all alleged heirs must be determined in a single hearing because the proceeding is in rem. (*Id*. at p. 903.) Donald's reliance on *Herzog* for the proposition that bifurcation of a section 11700 proceeding is error is, at best, overstated, as the court expressly did not decide the issue. (*California Building Industry Assn. v. State Water Resources Control Bd*. (2018) 4 Cal.5th 1032, 1043 [axiomatic that cases are not authority for propositions not considered].) Moreover, *Herzog* concerned competing heirship claims, not the claims of an assignee whose entitlement to distribution arises only out of a contract with an heir.

Even ignoring these distinctions, *Herzog* ultimately fails to provide support for Donald's arguments. In *Herzog*, the court concluded any error in bifurcating the section 11700 proceeding was harmless and did not warrant reversal. Because Kemp did not provide sufficient evidence to establish the purported half sister's heirship claim, it could not show it was reasonably probable the purported half sister would have obtained a more favorable result in a single proceeding in which the other alleged heirs offered evidence to prove their own status as heirs. (*Herzog*, *supra*, 33 Cal.App.5th at pp. 903–904.)

Likewise, in this case, John's rights as an heir were different from his contractual rights as Donald's assignee. The

29

trial court could not order distribution consistent with the assignment until it had first determined the identity and shares of the heirs. As explained above, under section 11702, the lack of a statement of interest did not affect John's rights as an assignee. Donald was afforded an opportunity to contest the validity of the assignment prior to the issuance of the final distribution order. Even if the record could be construed as reflecting a bifurcation of the section 11700 proceeding, we would find any error harmless.

In sum, neither John's petition nor any other filing in the section 11700 proceeding raised the issue of Donald's assignment to John. There was no request for distribution based on the assignment or challenge to the assignment. No interested party filed a statement of interest. The trial court's October 2019 order determined heirship. John's contractual rights as an assignee remained unaffected. We reject Donald's argument that John's rights as an assignee were forfeited. Those assignee rights were not adjudicated, and Donald has failed to establish that under sections 11700, 11702, or 11705, John's assignee rights had to be asserted in the proceedings to determine heirship or otherwise be waived or rendered moot by the order determining the heirs.

### E. Issue preclusion did not bar the trial court from considering Donald's assignment in the final distribution order

For similar reasons, we reject Donald's argument that res judicata in the form of issue preclusion barred the probate court from issuing a final distribution order consistent with Donald's assignment of his interest to John. "[I]ssue preclusion applies (1) after final adjudication (2) of an identical issue (3) actually litigated and necessarily decided in the first suit and (4) asserted against one who was a party in the first suit or one in privity

30

with that party." (*DKN Holdings LLC v. Faerber* (2015) 61 Cal.4th 813, 825.)

"'[A]n issue was actually litigated in a prior proceeding if it was properly raised, submitted for determination, and determined in that proceeding.' [Citations.] ' "The 'identical issue' requirement addresses whether 'identical factual allegations' are at stake in the two proceedings, not whether the ultimate issues or dispositions are the same." ' [Citations.] 'And the " 'necessarily decided' " prong means only that "the issue not have been 'entirely unnecessary' to the judgment in the initial proceeding." ' [Citations.] 'In considering whether these criteria have been met, courts look carefully at the entire record from the prior proceeding, including the pleadings, the evidence, the jury instructions, and any special jury findings or verdicts.' [Citations.] [¶] . . . [¶] The party asserting issue preclusion has the burden of establishing the requirements to apply that doctrine. [Citations.] Whether to apply the doctrine of issue preclusion is a question of law that we review de novo." (*In re Marriage of Brubaker & Strum* (2021) 73 Cal.App.5th 525, 537–538.)

Here, the issue of the rights of any assignee to distribution of a portion of Decedent's estate was not raised, submitted for determination, or decided in the section 11700 proceeding. Nor was it necessary to the October 2019 order. John's petition to determine entitlement to estate distribution sought only a determination of heirs, not the rights of any person that were contingent on those of the heirs, or a finding as to all persons who may at some point be able to make a claim for distribution. While the probate court would have had jurisdiction to consider broader claims than heirship alone, no such claims were made,

31

and they were not necessary to the court's order determining the heirs and the percentages of interest based on intestate succession. "[P]robate orders are conclusive only as to matters 'actually passed upon by the probate court.' [Citations.]" (*David v. Hermann* (2005) 129 Cal.App.4th 672, 683.) Issue preclusion did not bar the probate court from giving effect to Donald's assignment to John in the final distribution order. (*Miller v. Campbell, Warburton, Fitzsimmons, Smith, Mendel & Pastore* (2008) 162 Cal.App.4th 1331, 1342 [collateral estoppel inapplicable where probate court did not decide the issue in prior proceeding].)

## II.    The Trial Court Did Not Err in Finding Donald Failed to Establish John Rescinded the Assignment

We additionally reject Donald's argument that the trial court erred in concluding the evidence did not establish John rescinded the assignment.

In general, "[t]he question of whether a contract has been cancelled, rescinded or abandoned is a mixed question of law and fact [citations,] which is addressed to the trial court [citations,] and the finding of the trial court will be upheld if it is supported by substantial evidence." (*Ross v. Frank W. Dunne Co.* (1953) 119 Cal.App.2d 690, 698–699 (*Ross*).) However, as "the party *opposing* enforcement of a contract," Donald had the burden of establishing the assignment was rescinded. (*Saheli v. White Memorial Medical Center* (2018) 21 Cal.App.5th 308, 324; Evid. Code, § 500.) Here, the trial court concluded Donald did not meet that burden. Thus, we must determine whether the evidence compelled a finding in Donald's favor as a matter of law. " 'Specifically, the question becomes whether the appellant's evidence was (1) "uncontradicted and unimpeached" and (2) "of

32

such a character and weight as to leave no room for a judicial determination that it was insufficient to support a finding." ' [Citation.]" (*Herzog*, *supra*, 33 Cal.App.5th at p. 904.)

Donald fails to show that the evidence of rescission compelled a finding in his favor as a matter of law. Indeed, the only evidence that could support a finding of rescission was the factual recitation in Donald's verified objection to the administrator's supplemental first and final account. The objection asserted that in July 2020, during a telephone call, "Donald brought up the Assignment providing for distribution of his share to John. John responded, 'Don't be ridiculous. I was never planning to keep it all knowing we were equal beneficiaries of our rich nephew,' or words to that effect. John reassured Donald he would split the money 50-50 if funds were distributed all to him."

The trial court evaluated this evidence and gave it "very little weight." Although there was no evidence directly contradicting Donald's account of the call with John, the trial court noted the recitation was inconsistent and out of character with the other evidence of the brothers' communications. The court further reasoned that if John wished to rescind the assignment, he most likely would have conveyed that intent to ARB and the administrator of Decedent's estate. On appeal, we defer to the trial court's credibility determinations and we do not reweigh the evidence. (*Orange Catholic Foundation v. Arvizu* (2018) 28 Cal.App.5th 283, 292; *Ross*, *supra*, 119 Cal.App.2d at p. 699.)

Further, the trial court could properly consider the ambiguous nature of John's alleged statements in concluding Donald failed to establish evidence of rescission. Mutual

rescission "requires an intent to rescind on the part of both parties." (*Pennel v. Pond Union School Dist.* (1973) 29 Cal.App.3d 832, 838.) Even crediting Donald's recitation of his conversation with John, neither Donald nor John expressed intent to rescind. During the call, Donald "brought up" the assignment, but did not indicate he wished to rescind it. Further, John's purported statements about splitting the money with Donald if it was all distributed to him did not reflect John's "express consent" to rescind the assignment, and further presupposed that he would receive "all" of the estate in the first instance. This evidence does not compel a finding as a matter of law that John rescinded the assignment.

## DISPOSITION

The trial court order is affirmed.  The parties are to bear their own costs on appeal.

### CERTIFIED FOR PUBLICATION

ADAMS, J.

We concur:

LAVIN, Acting P. J.

EGERTON, J.