Filed 2/28/24  Rosales v. Janelle S. CA2/3

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| ASTRID ROSALES, | B322055 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. LF005708) |
| v. | |
| JANELLE S., | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Firdaus F. Dordi, Judge.  Affirmed.

Rodriguez Law Group, Patricia Rodriguez, and Cierra Wilson for Plaintiff and Appellant.

Taub & Taub and Richard F. Taub for Defendant and Respondent.

————————————————

Astrid Rosales appeals from a parentage judgment, urging that the trial court erred by refusing to recognize her as a third parent of minor Lila S. pursuant to Family Code[1] section 7612, subdivision (c) (section 7612(c)).  Section 7612(c) permits a court to find that a child has more than two parents if recognizing only two parents "would be detrimental to the child."  Astrid contends she had a long-term romantic relationship with Lila's biological mother, Janelle S., and she acted as Lila's coparent for the first six years of the child's life.  Astrid thus urges that failing to accord her legal status as Lila's parent is detrimental to Lila within the meaning of section 7612(c).

As we discuss, Astrid has forfeited her appellate contentions by failing to provide this court with an adequate appellate record and with appropriate legal and factual citations.  In the alternative, the trial court's findings are supported by substantial evidence.  Accordingly, we affirm.

**FACTUAL AND PROCEDURAL BACKGROUND[2]**

Lila was born in April 2010 and is the biological child of Janelle and Marlon M.  Janelle and Marlon lived together briefly after Lila's birth, but ended their relationship when Lila was

---

[1]	All subsequent statutory references are to the Family Code.

[2]	An appellant's opening brief must contain "a summary of the significant facts" relevant to the issues raised in the appeal, supported by a citation to the page number of the record where each fact appears.  (Cal. Rules of Court, rule 8.204(a)(2)(C).)  As we discuss below, appellant's opening brief does not contain an appropriate factual summary.  Nonetheless, we have briefly summarized the relevant facts based on our independent review of the record.

2

about two months old.  In February 2012, the Los Angeles Superior Court entered a parentage judgment declaring Janelle and Marlon to be Lila's parents, and awarded Janelle sole legal and physical custody of Lila.

Janelle and Astrid dated intermittently between 1999 and 2007, and lived together in Hawaii from 2007 to 2008.  According to Astrid, she and Janelle continued their relationship after returning to Los Angeles in 2008, and they were still dating when Janelle became pregnant with Lila.  Astrid and Janelle broke up for about six months between December 2009 and May 2010, and then reconciled and resumed living together until 2016.  Astrid contends that she acted as Lila's coparent between 2010 and 2016, including by cooking for Lila, caring for her when she was sick, taking Lila to and from school, scheduling playdates, paying for some of Lila's expenses, and holding Lila out as her daughter.  Astrid also contends that Janelle recognized her coparent status, including by identifying her as Lila's other parent on school forms and registering Lila in preschool with a hyphenated version of Janelle's and Astrid's last names.

Janelle gives a very different account of her relationship with Astrid.  According to Janelle, she and Astrid have not been involved romantically since 2007, although they remained good friends until 2016.  After Janelle broke up with Marlon in June 2010, she sought a restraining order against him and lived for a short time with Astrid's mother.  Subsequently, Janelle moved into an apartment with her sister.  Astrid did not share the apartment with Janelle, but she offered to care for Lila while Janelle was at work.  Because Janelle worked nights, Astrid spent those nights at Janelle's apartment.  Janelle contends,

however, that Astrid never lived with her after 2008, and Astrid was never Lila's coparent.

It is undisputed that Janelle did not allow Astrid to see Lila after about mid-2016. In December 2017, Astrid filed the present action to establish a parental relationship with Lila.

In June 2018, the court entered a stipulated order that Astrid have three[3] professionally monitored two-hour visits with Lila. By all accounts, the visits went badly: Lila cried and shook during most of the first visit, and she refused to speak to Astrid during either visit.

In January 2019, the court entered a stipulated order that Lila would continue therapy with her current therapist, with a focus on reunification between Lila and Astrid if deemed appropriate by the therapist. According to the therapist, Astrid was the primary focus of Lila's therapy for about six months. Lila repeatedly told the therapist that she did not want to see Astrid and was uncomfortable when Astrid sent her gifts and packages. The therapist opined that there was not a path for reunification between Lila and Astrid because Lila "does not view Astrid as a family member or even a friend, and does not understand why she would be forced to see one of her mother's old friends."

The trial court heard testimony over two days in March and April 2022, including from Janelle, Astrid, and Lila's therapist. At the conclusion of testimony, the court found that Astrid was Lila's presumed parent pursuant to section 7611, subdivision (d). The court further concluded, however, that there was not a strong

---

[3]     Although the court ordered three visits, the appellate record contains a record only of two.

relationship between Lila and Astrid, and thus denying Astrid third-parent status pursuant to section 7612(c) would not be detrimental to Lila.  The court therefore entered a parentage judgment naming Janelle and Marlon as Lila's sole parents.

Astrid timely appealed from the parentage judgment.

## DISCUSSION

Astrid contends that the trial court erred by refusing to grant her third-parent status under section 7612(c), and Janelle violated the parties' joint stipulation regarding reunification therapy.  These claims lack merit, as we discuss.

## I.    Astrid has forfeited her appellate contentions.

We begin by addressing the inadequacy of the appellate record and Astrid's appellate briefs.  It is a fundamental principle of appellate procedure that the trial court's order is presumed to be correct.  To overcome the presumption of correctness, appellants "must affirmatively establish prejudicial error by providing an adequate record, citing to the record, and presenting a persuasive argument with citations to supportive legal authorities.  (Cal. Rules of Court, rule 8.204(a)(1)(B), (C); *Jameson v. Desta* (2018) 5 Cal.5th 594, 609; *Lee v. Kim* (2019) 41 Cal.App.5th 705, 721; *Nwosu v. Uba* (2004) 122 Cal.App.4th 1229, 1246.)"  (*LNSU #1, LLC v. Alta Del Mar Coastal Collection Community Assn.* (2023) 94 Cal.App.5th 1050, 1070 (*LNSU*).)

In the present case, Astrid has wholly failed to provide this court with an adequate appellate record or argument.  Much of the direct testimony in the trial court was through declarations,

which Astrid has not provided to this court.[4]  Further, Astrid's appellate briefs contain few legal citations and cite absolutely *no* authority for many of her assertions, including that she need not demonstrate an existing relationship with Lila to establish detriment under section 7612(c).  Finally, none of Astrid's factual assertions is supported by a precise citation to the appellate record:  Her factual assertions either are entirely unsupported or cite to hundreds of pages of testimony.

"It is not our role as an appellate court independently to review the record for error and to construct arguments for appellants that would require reversal of the judgment.  (*United Grand Corp. v. Malibu Hillbillies, LLC* (2019) 36 Cal.App.5th 142, 153; *Benach v. County of Los Angeles* (2007) 149 Cal.App.4th 836, 852.)"  (*LNSU, supra*, 94 Cal.App.5th at p. 1070.)  Instead, " ' "[w]hen an appellant fails to raise a point, or asserts it but fails to support it with reasoned argument and citations to authority, we treat the point as waived." ' "  (*Cahill v. San Diego Gas & Electric Co.* (2011) 194 Cal.App.4th 939, 956; see also *In re Marriage of Falcone & Fyke* (2008) 164 Cal.App.4th 814, 830 ["The absence of cogent legal argument or citation to authority allows this court to treat the contentions as waived"].)  Accordingly, we conclude that Astrid has forfeited each of her appellate contentions.

---

[4]     Some of these declarations appear in the respondent's appendix.

6

## II. Alternatively, the trial court's findings are supported by substantial evidence.

Notwithstanding our conclusion that Astrid has forfeited her appellate contentions, we review those contentions on the merits and conclude that the trial court's findings are supported by substantial evidence.

The Uniform Parentage Act (§ 7600 et seq.) provides the framework by which California courts make parentage determinations. (*M.M. v. D.V.* (2021) 66 Cal.App.5th 733, 740–742; *Dawn D. v. Superior Court* (1998) 17 Cal.4th 932, 937.) A person qualifies as a natural parent either by giving birth or by meeting one of the applicable statutory methods for being adjudged a natural parent (§ 7610, subd. (a)), including by "receiv[ing] the child into their home and openly hold[ing] out the child as their natural child" (§ 7611, subd. (d)). A judgment or order of the court determining the existence or nonexistence of the parent and child relationship is, with exceptions not relevant here, "determinative for all purposes." (§ 7636.)

It is undisputed in the present case that Janelle and Marlon are legally recognized as Lila's parents under the 2012 parentage judgment. Astrid did not attempt to set aside that judgment, but she sought to be adjudicated Lila's third parent pursuant to section 7612(c). That section provides that in an appropriate action, a court "may find that more than two persons with a claim to parentage under this division are parents if the court finds that *recognizing only two parents would be detrimental to the child.*" (Italics added.) In determining detriment, the court "shall consider all relevant factors, including, but not limited to, the harm of removing the child from a stable placement with a parent who has fulfilled the child's

7

physical needs and the child's psychological needs for care and affection, and who has assumed that role for a substantial period of time." (§ 7612(c).) On appeal, we review the trial court's detriment finding under section 7612(c) for substantial evidence (*In re Donovan L.* (2016) 244 Cal.App.4th 1075, 1088); thus, because Astrid had the burden of establishing detriment below, we may reverse the judgment only if " 'the evidence compels a finding in favor of the appellant as a matter of law' " (*Estate of Herzog* (2019) 33 Cal.App.5th 894, 904, citing *In re I.W.* (2009) 180 Cal.App.4th 1517, 1527–1528, disapproved of on other grounds in *Conservatorship of O.B.* (2020) 9 Cal.5th 989, 1010, fn. 7).

To demonstrate detriment, a putative third parent must establish, at a minimum, an existing relationship between the child and the putative parent. Thus, for example, in *In re L.L.* (2017) 13 Cal.App.5th 1302, 1315, the Court of Appeal held that the lower court erred by recognizing a biological father as a child's third parent because the child did not "have a strong relationship with" the biological father. The court explained: "Absent an *existing* relationship with [the child], there is no ground on which [the biological father] could be recognized as a third parent under section 7612, subdivision (c). . . . [A]ll of the evidence submitted at the hearing, as well as arguments of counsel, showed [the child] did not have an existing relationship with [the biological father] at that time. . . . [A]t the time of the hearing, [biological father] had had no relationship with [the child] for at least six years. Accordingly, there is insufficient evidence to support a finding that [biological father] had an existing relationship of any sort, much less a parent-child relationship, with [the child] at the time of the hearing.

8

Therefore, the court erred by finding [the biological father] is a third parent under section 7612, subdivision (c)." (*Id.* at pp. 1316–1317.)

Similarly, *In re Donovan L.*, *supra*, 244 Cal.App.4th at p. 1078, held that the juvenile court erred in applying section 7612(c) given the court's determination that a child and his biological father lacked an existing parent-child relationship. The appellate court noted that section 7612(c) was intended to " 'protect[ ] children from harm by *preserving the bonds* between children and their parents' (Sen. Rules Com., Off. of Sen. Floor Analyses, 3d reading analysis of Sen. Bill No. 274 (2013–2014 Reg. Sess.) as amended May 14, 2013, p. 7, italics added) and avoid the 'disastrous emotional, psychological, and financial consequences for a child, who may be separated from one or both of the parents *he or she has always known*." ' (Assem. Com. on Judiciary, analysis of Sen. Bill No. 274 (2013–2014 Reg. Sess.) as amended May 14, 2013, pp. 4–5, italics added)." (*In re Donovan L.*, at p. 1089.) Thus, the court concluded, " 'an appropriate action' " for application of section 7612(c) "is one in which a court finds an *existing*, rather than *potential*, relationship between a child and a putative third parent, such that 'recognizing only two parents would be detrimental to the child.' " (*Id.* at pp. 1089–1090 (second italics added); compare *C.A. v. C.P.* (2018) 29 Cal.App.5th 27, 38 [affirming third-parent finding where putative third parent had " 'an existing and significant bond' " with the child at time of judgment].)

In the present case, while there was evidence of a relationship between Astrid and Lila prior to 2016, there was *no* evidence of a continuing relationship between them by the time of the hearing, nearly six years later. To the contrary, the

undisputed evidence was that Lila and Astrid had almost no contact between 2016 and 2022, and Lila repeatedly said she did not want to see Astrid. Further, Lila refused to speak to or engage with Astrid during their supervised visits in July 2018, and Lila's therapist believed that there was no path for any kind of reunification between Lila and Astrid. On this record, substantial evidence unquestionably supported the trial court's finding that Lila would not suffer detriment if only Janelle and Marlon were recognized as her parents.

Astrid asserts that she could meet her burden under section 7612(c) by demonstrating a relationship between herself and Lila was "available"—that is, that it had existed in the past and could be reestablished in the future. However, she cites no authority for this proposition, and we are not aware of any. To the contrary, *all* of the authority of which we are aware holds that a third-parent finding is permitted under the statute only where there is an existing strong relationship between a child and putative third parent. (See *In re L.L.*, *supra*, 13 Cal.App.5th at pp. 1316–1317; *In re Donovan L.*, *supra*, 244 Cal.App.4th at p. 1078.) By her own admission, Astrid has not made such a showing here.

Finally, Astrid asserts that Janelle violated the parties' stipulation regarding counseling because reunification-focused therapy lasted just six months and the therapist was unqualified to provide reunification therapy. But the trial court found that Astrid had not presented any evidence as to the alleged inadequacy of the reunification therapy, and she points to none on appeal. She therefore has failed to demonstrate error.

10

## DISPOSITION

The judgment is affirmed.  Respondent is awarded her appellate costs.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

                                       EDMON, P. J.

We concur:

                        EGERTON, J.

                        ADAMS, J.