Filed 6/20/25  Estate of Wong CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT

## DIVISION ONE

| | |
|---|---|
| Estate of LLOYD QUONG WONG, Deceased. | |
| DEBRA LEE MILLS, Petitioner and Appellant, v. DAVID HAW, Objector and Respondent. | A169589 (Marin County Super. Ct. No. PRO2204029) |

After appellant Debra Lee Mills informed respondent David Haw about the death of Lloyd Quong Wong, a man they both knew as their uncle, they both filed separate petitions to be recognized as Wong's heirs.  Haw disputed that Mills was his biological cousin and entitled to a portion of Wong's estate.  The trial court granted Haw's petition and denied Mills's petition.  In light of the deferential standard of review, we affirm.

I.
FACTUAL AND PROCEDURAL
BACKGROUND

This case is a reminder of the disheartening historical treatment of Chinese immigrant women, its continuing consequences, and the law's inability, in the face of uncertain evidence, to remedy possible past wrongs.

1

The facts about the parties' familial connections are taken from a declaration Mills submitted in the probate court. (Haw asserts that some facts lack corroboration.) In researching her family history, Mills learned that her grandmother, Lum Sing Wong, was forced to work as a concubine in the early 1900s in Oregon. The grandmother fled to the San Francisco Bay Area in 1918 because she was being treated cruelly. At the time she fled, she had a son who was born in 1915. That son is the father of respondent David Haw. There is no dispute that Haw is Wong's nephew and thus his heir.

According to Mills, the grandmother was pregnant with Mills's mother when she fled to California, and Mills's mother was born later the same year. The parties dispute Mills's version of her mother's early life and, as a result, whether Mills also is Wong's heir.

Mills stated that because Haw's father was born in Oregon and both his mother and the man who had brought the mother from China appeared on his birth certificate, he was considered a "legitimate" child. Because he was considered legitimate and the fact he was a boy, Haw's father was placed in a boarding school for Chinese boys.

In contrast, Mills' mother was considered "illegitimate" and ineligible for such a school.[1] She was placed with foster parents, whose names were listed on her birth certificate. Mills attested that she "believe[s] that the information provided on [her mother's] birth certificate was false and that no legal adoption occurred." According to Mills, the false information was likely provided "in an effort to protect [Mills's] mother from a life as an illegitimate

---

[1] Haw stated below that his understanding of the circumstances surrounding his grandmother's departure from Oregon are "inconsistent" with Mills's description. For example, he provided accounts of San Francisco institutions that he said did, in fact, care for the babies and young children of prostitutes.

child born to a prostitute and hunted by . . . gangs controlling . . . smuggling rings." Mills notes that a midwife, not a medical doctor, attested to the birth, which "makes the falsified record more plausible." The midwife is identified on the birth certificate as "Mrs. Wong," and the midwife's signature does not appear on the certificate, only a typed name on the signature line. Mills has been unable to find any legal documentation that the people who raised her mother ever legally adopted her. The death certificate for Mills's mother lists the mother's mother as "Lin Lee," which is similar to the woman listed on her birth certificate ("Lee Quan Lin") and different from the name of the woman Mills claims was her biological grandmother, Lum Sing Wong.

After Mills's mother was born, Mills's grandmother later had two more children, a son born in 1923, and then decedent Wong, who was born in 1945 and is the subject of these probate proceedings. According to Mills, this means that Mills is Wong's niece, and Mills and Haw are cousins. Also according to Mills, her mother knew her own mother (Mills's grandmother, Lum Sing Wong) and her three brothers, as did Mills, and no one questioned their family ties. For example, Mills attended Haw's 1979 wedding and was part of a family wedding photo that was submitted to the probate court showing her standing between decedent Wong and his brother, Haw's father.

Wong died intestate in August 2022. He was never married and did not have children, and his siblings predeceased him. The Marin County Public Administrator (Public Administrator) contacted Mills, apparently after obtaining her contact information in Wong's effects. Mills informed the Public Administrator that Haw also was related to Wong, and she informed Haw of Wong's death.

Mills and Haw corresponded by email and text about their familial relations. Mills at one point wrote to Haw, "We did not know of your dad

3

until that trip to SF to meet grandma. Then we started keeping in touch with him and Uncle Bill [the other son born to the grandmother]. I think I was 10 or 11 years old." Her email ended, "We sent a letter to Raymond, the guy that keeps emailing us. That we know back then they did not want girls, that's why Grandma gave her up to a friend in Stockton. But it's strange because mom's birth certificate says she was born in Modesto. I thought it was Oakland, we were told. And then her mom's name is not the same. So we emailed Raymond to see if we can get DNA tests to see if we are related. If not, we still enjoyed being family!" Haw later texted Mills, "Apparently you and I are Uncle Lloyd's only remaining blood relatives."

In December 2022, Mills filed a Nomination of Public Administrator stating she was entitled to administer Wong's estate but that she declined to act and nominated the Public Administrator instead. That same day, the Public Administrator filed a petition to administer Wong's estate and for letters of administration. Mills was the only relative listed in the petition.[2] The probate court appointed the Public Administrator as administrator and issued letters in February 2023.

The Public Administrator hired an heir search company. The company's search found "insufficient information to establish the existence of any heirs of decedent."

---

[2] Later, Mills's niece Theresa Lee and her nephews Michael Lee and Daniel Lee (the Lees) made an appearance in the probate court and were represented by the same attorneys who represented Mills below. Mills is currently self-represented but purports to file a brief on behalf of herself and the Lees. But she was the only party who appealed from the probate court's order and thus is the sole appellant.

Haw in June 2023 filed a petition for a determination of rights under Probate Code section 11700.³  The petition does not appear in the appellate record.  But the record reveals that Haw attested as part of that petition that he had no personal knowledge or credible basis to affirm the existence of any other heirs at law to Wong's estate.  And there are indications in the record that Haw might have represented that he did not recall Mills attending his wedding.  Mills and the Lees did not oppose the petition.⁴

Two months later, in August 2023, Mills and the Lees filed their own petition for a determination of rights under section 11700 (the Mills/Lee petition).  Mills submitted family photos and various correspondence to establish her and her mother's connection to Wong and the extended family.  This included the photo from Haw's wedding that featured Haw and his wife, along with the three men Mills claims as her uncles.

Mills also presented an email from Wong to Mills and signed, "Your rotten and frustrated uncle" (the frustration was a reference to his email provider).  And she submitted evidence that her grandmother had four biological children (i.e., including Mills's mother).  Mills later provided

_____

³ The statute provides that "[a]t any time after letters are first issued to a general personal representative and before an order for final distribution is made, the personal representative, or any person claiming to be a beneficiary or otherwise entitled to distribution of a share of the estate, may file a petition for a court determination of the persons entitled to distribution of the decedent's estate.  The petition shall include a statement of the basis for the petitioner's claim."  All statutory references are to the Probate Code.

⁴ Haw makes much of this non-opposition in his appellate brief, devoting a whole section to arguing that Mills waived her right to challenge the probate court's granting of his petition.  Because Mills has acknowledged throughout these proceedings that Haw is Wong's nephew and thus entitled to distribution of his estate, she of course had no reason to oppose Haw's petition.

excerpts from her mother's journal that detailed learning of her true biological family, one of which said, "Now the next trip. I can't remember whether Lou or Grandma took me to meet a Lady in SF. Surprise! Saying meet my biological Mom. Yes, saying she has been keeping up about me thru all the years of my growing up." She also presented emails from Wong to Mills that referred to Mills's mother as "sister" and "Sis" and said that the mother's ability to predict a change in the weather through her joints "must run in [the] family" since he experienced the same thing.

The Mills/Lee petition acknowledged that had Wong's sister (Mills's mother) been legally adopted, this would have severed the legal relationship between her and her natural mother. (§ 6451, subd. (a).) But they argued that they were Wong's intestate heirs because Mills's mother was not, in fact, legally adopted.

The Public Administrator took no position on the separate petitions.

Haw filed a response to the Mills/Lee petition. At that time, Haw took no position on whether Mills and the Lees were Wong's heirs. But he asserted that he was "unaware of reliable evidence" linking Mills's mother to Wong's mother given that Wong's mother is not listed on the birth certificate of Mills's mother. Haw further noted that although he now remembered that Mills had attended his (Haw's) wedding, Haw "did not extend a formal invitation to Ms. Mills for this occasion." He stated that the photo of Mills at the wedding reveals that Mills is not wearing a corsage, which is "significant in the context of Chinese wedding customs, as part of which corsages are traditionally ordered for relatives of the couple being married as well as members of the bridal party, to be worn during the wedding ceremony." In reply, Mills attested she was "not personally aware of this Chinese wedding custom" but that "in many cultural wedding customs, it is uncommon to have

6

a random guest, not invited to a wedding, participate in the family wedding photograph."

According to the minute order from an unreported hearing in late September 2023, the probate court explained why it planned to "grant[] the petition," a possible indication it intended to grant both petitions, as Mills later represented. But then Haw's attorney said, apparently for the first time, that he planned to object to the Mills/Lee petition, and the court scheduled another hearing.

Haw thereafter filed verified objections to the Mills/Lee petition. He requested that their petition be denied in its entirety and that the court decline to recognize Mills or any of the Lees as Wong's heirs. Haw argued that there was insufficient evidence of the biological relationship between Mills's mother and Haw's grandmother. Haw attested that neither of his parents "ever acknowledged or referred to [Mills's mother] as a half-sister of [Wong]." According to Haw, he "distinctly remembers [his parents] expressing the belief that [Mills's mother] was related to William (Bill) Lee's family [the third child of Haw's grandmother]."[5] Haw argued in the alternative that even if the two were related, the evidence showed that the grandmother abandoned Mills's mother, thus severing the legal relationship between the two.

---

[5] Mills agreed with the statement, since she contended that her mother and Bill Lee were both Wong's siblings. She also noted that although Haw was apparently trying to disclaim having any relationship with Bill Lee, Lee was wearing a corsage in the wedding photo. The Public Administrator informed the court that it found a copy of Lee's obituary in Wong's possessions after his death, along with a handwritten note that said something to the effect that "the only ones left were [Wong], [Mills's mother] and [Haw's father]."

The Public Administrator again stated it took no position on whether any of the petitioners were Wong's intestate heirs.

At an unreported hearing in November 2023, the court concluded there was clear and convincing evidence that Haw was entitled to distribution of Wong's estate as an intestate heir, and thus granted Haw's petition. It then denied the Mills/Lee petition, concluding there was "no clear and convincing evidence that the beneficiaries of that petition are entitled to distribution under the same terms."

## II.
### DISCUSSION

Proceeding without an attorney, Mills has filed an opening brief essentially asking that this court reweigh the evidence presented below. While we might have found Mills's evidence more compelling than did the trial court, we are bound to affirm the trial court's rulings in light of the applicable deferential standard of review.

As we have said, section 11700 provides that a person claiming to be a beneficiary of an estate may file a petition for a court determination. (See *Estate of Herzog* (2019) 33 Cal.App.5th 894, 902.) The court may grant or deny the petition on the pleadings without an evidentiary hearing or further discovery, and a petition may be granted "only upon a showing of good cause." (§ 11704, subd. (b)(2).) "We generally apply the substantial evidence standard when the sufficiency of the evidence is at issue on appeal. However, where the party who had the burden of proof in the probate court contends the court erred in making findings against it, 'the question for a reviewing court becomes whether the evidence compels a finding in favor of the appellant as a matter of law. [Citations.] Specifically, the question becomes whether the appellant's evidence was (1) "uncontradicted and unimpeached" and (2) "of such a character and weight as to leave no room for a judicial

8

determination that it was insufficient to support a finding." ' " (*Herzog*, at p. 904.)  Although Mills provided a good amount of evidence to the probate court of her connection to Wong, we cannot say that it left no room for a finding against her.

Instead of simply pointing to this deferential standard of review, Haw accuses Mills of sanctionable appellate conduct while simultaneously making procedurally improper requests.  He includes a section in his respondent's brief titled "Motion to Dismiss" and argues that the appeal is "frivolous" and "without merit."  (Bold omitted.)  In yet another section, he requests that he be awarded both his attorney fees and costs based on the frivolous nature of Mills's appeal.  But he did not file a separate motion for either of these requests as required by California Rules of Court, rule 8.54(a)(1).  And in any event, the appeal can hardly be deemed frivolous, as it appears from the record that the probate court initially contemplated granting Mills's motion.

In her opening brief, Mills asks the court to "[h]elp us claim our family lineage by taking into consideration all of the obstacles many indentured Chinese women had trying to raise and keep their family safe from those who chose to enslave them."  And she asks the court to acknowledge those obstacles and consider "the many twists and turns Chinese women had to navigate in the late 19th and early 20th centuries."  This is not the proper forum to redress these past societal wrongs.  But the court does acknowledge the hurdles that Mills personally faced in proving her connection to someone with whom she clearly shared a familial bond throughout her life, even if it was one that she was unable to establish as sufficient under current California intestacy law.

## III.
### DISPOSITION

The order denying appellant's petition is affirmed. In the interests of justice, each side shall bear their own costs. (Cal. Rules of Court, rule 8.278(a)(5).)

_____

Humes, P. J.

WE CONCUR:

_____

Banke, J.

_____

Smiley, J.

*In re Estate of Wong*  A169589

11